(No. 18718.—

J. W. PORTER, Appellant, *vs.* LEON L. LOEHR *et al.* Appellees.

*Opinion filed October 25, 1928—Rehearing denied Dec. 7, 1928.*

SHANNON & MORRILL, ROBERT N. HOLT, and FLOYD E. BRITTON, for appellant.

**354**

SAMUEL A. ETTELSON, Corporation Counsel, THOMAS F. REILLY, and GEORGE H. MASON, (JOSEPH F. GROSSMAN, MILTON D. SMITH, and GEORGE F. MULLIGAN, of counsel,) for appellees.

Mr. CHIEF JUSTICE DEYOUNG delivered the opinion of the court:

J. W. Porter, in behalf of himself and such other taxpayers of the city of Chicago as might join with him, filed a bill of complaint in the superior court of Cook county to restrain the members and officers of the Retirement Board of the Policemen's Annuity and Benefit Fund of the city of Chicago from paying pensions to former policemen in excess of the amounts allowed them by the laws in force at the times of their respective retirements, on the ground that certain acts passed by the Fifty-fifth General Assembly purporting to authorize such increases were unconstitutional and void. The defendants answered the bill. Shortly thereafter three hundred seventy-one former policemen by their petition sought to be made additional defendants. The prayer of their petition was granted. They first interposed a demurrer to the bill, but later withdrew the demurrer and adopted the answer of the original defendants. By agreement the cause was submitted to the court upon the bill and answer. A decree was rendered by which the bill was dismissed for want of equity. From that decree the complainant prosecutes this appeal.

An act entitled, "An act to provide for the setting apart, formation and disbursement of a police pension fund in cities having a population exceeding two hundred thousand inhabitants," (Cahill's Stat. 1925, p. 461; Smith's Stat. 1925, p. 485;) approved June 29, 1915, became effective on the first day of July of that year. The pertinent provisions of certain sections of the act as amended and in force on June 30, 1921, were as follows: Section 1 provided for the

creation, maintenance and disbursement, as prescribed in the act, of a pension fund for policemen in cities having a population of two hundred thousand or more. By section 2 a board of five members charged with the disbursement of the fund and the designation of its beneficiaries was created. This board was known as the Board of Trustees of the Police Pension Fund of the city in which it was established. Section 3 authorized the payment to a policeman, in a city of the requisite population, retiring at the age of fifty years or more and after twenty years' service, of a pension equal to one-half of the salary attached to the rank which he held for one year immediately preceding his retirement. The maximum annual pension, however, was fixed at $1300 for a general superintendent of police, $1150 for a first deputy superintendent of police, $1100 for a captain of police and $1000 for a lieutenant of police. All other policemen retired, it was provided, should receive not less than $600 nor more than $900 per annum. Section 4 made provision for the payment of a pension to any policeman who became physically disabled while in, and in consequence of, the performance of police duty. This pension should not exceed one-half of the salary attached to his rank at the time of his retirement, and the maximum and minimum figures were the same as fixed by section 3. Whenever the disability ended the pension ceased and the policeman thereupon became re-instated in the department in the rank held by him at the time of his retirement. Section 5 provided for the payment of the pension described in section 3 to the widow and children of a policeman who lost his life or received injuries resulting in death while in, and in consequence of, the performance of police duty. Provision was also made by this section for the payment of a pension to the widow and children of a policeman who died from other causes or who should be legally adjudged insane. Section 9 provided that the pension fund should consist, among others, of deductions, made by the city comptroller,

of two and one-half per cent of the salaries or wages paid to policemen. The city was authorized to levy a tax, not exceeding six-tenths of a mill on the dollar, upon the taxable property of the city, in such sum as would, when added to the deductions from the salaries or wages of policemen and the receipts available from other sources, yield sufficient income to pay the pensions authorized by the act. By section 10 the board of trustees of the police pension fund was given exclusive control and management of the fund.

An act entitled, "An act to provide for the creation, setting apart, maintenance, and administration of a policemen's annuity and benefit fund in cities having a population exceeding two hundred thousand inhabitants," (Cahill's Stat. 1925, p. 466; Smith's Stat. 1925, p. 497;) was approved on June 29, 1921, and became effective on the first day of July of the same year. The pertinent sections of that act as amended and in force June 30, 1927, are as follows: Section 1 provides that in each city of the State having a population exceeding two hundred thousand, a policemen's annuity and benefit fund shall be created, set apart, maintained and administered as prescribed in the act. Section 2 makes provision for a board of seven trustees which is charged with the duty of administering the annuity and benefit fund. This board is known as the Retirement Board of the Policemen's Annuity and Benefit Fund of the particular city. By section 11 any such city is authorized to levy a tax, not exceeding one and six-tenths mills on the dollar of the assessed valuation of all taxable property in the city, for the purpose of providing revenue for the annuity and benefit fund. Section 50 provides that this fund shall, on the first day of January following the year in which the act becomes effective in any city, supersede any police pension fund there in operation by virtue of the act of June 29, 1915, as amended; that all moneys, securities and other assets of an existing police pension fund shall be transferred on such first day of January to the retirement board

of the annuity and benefit fund, and that all annuities, pensions and other benefits allowed by the board of trustees of such police pension fund prior to the same first day of January shall thereafter be paid by the retirement board from the annuity and benefit fund, "according to the law or laws under which such annuities, pensions or other benefits were allowed." Section 51 provides that for the purpose of paying annuities, pensions and benefits which have been or shall be allowed by authority of the act of June 29, 1915, as amended, or under certain sections of the instant act, any city in which the later act becomes effective shall contribute to the annuity and benefit fund, annually, a sum not in excess of one million seven hundred thousand dollars.

By an amendatory act approved July 7, 1927, (Laws of 1927, p. 271; Cahill's Stat. 1927, pp. 475, 476; Smith's Stat. 1927, pp. 525, 526;) the provision of section 3 of the act of June 29, 1915, as amended, that the retired policeman shall be paid a pension equal to one-half of the salary attached to his rank for one year immediately prior to his retirement, and the provision of section 4 that the disabled policeman shall be paid a pension not exceeding one-half of his salary at the time of his retirement, together with the schedule in both sections fixing the maximum and minimum pensions to be paid, were eliminated, and there was substituted in each of these sections the provision that the policeman, after his retirement, shall be paid annually, in equal monthly installments, according to his rank at any time, as follows: Patrolman or police operator $960, sergeant $1080, lieutenant $1200, and captain or a superior rank $1300.

The same General Assembly amended various sections of the act of June 29, 1921, as amended. Sections 11, 50 and 51 were amended by an act approved July 7, 1927. (Laws of 1927, p. 293; Cahill's Stat. 1927, pp. 483, 499, 500-502; Smith's Stat. 1927, pp. 540, 556-558.) The maximum tax rate which by authority of section 11 might

be levied for the purpose of providing revenue for the annuity and benefit fund was for the period of eleven years from January 1, 1928, increased from one and six-tenths mills to one and seven-tenths mills on the dollar of the assessed valuation of all taxable property in the city. After the expiration of the designated period the maximum tax rate for the purpose specified will again be one and six-tenths mills on the dollar. Section 50 was amended by eliminating therefrom the provision that all annuities, pensions and other benefits allowed prior to the first day of January following the year in which the act became effective should thereafter be paid from the annuity and benefit fund created by the act, "according to the law or laws under which such annuities, pensions or other benefits were allowed," and by inserting instead the provision that "pensioners who by reason of police service are now receiving or are entitled to receive annuities, pensions or other benefits under the law or laws prior to this act," shall be paid according to a schedule identical in its classification and amounts with the schedule set forth in the act of July 7, 1927, amending sections 3 and 4 of the act of June 29, 1915. Section 51 was amended to permit the annual contribution by the city for the purposes stated in section 51, during the years in which by the amendment to section 11 the tax levy may be over one and six-tenths mills on the dollar, to exceed one million seven hundred thousand dollars by such an amount as the excess of the tax levy over one and six-tenths mills on the dollar will provide. Sections 11 and 51 were also amended by other acts approved and in force on July 7, 1927, which reduce the tax rates one-half, to accord with other amendments of certain sections of the Revenue act, (Laws of 1927, p. 745,) approved and effective on the same day, changing the assessed value from one-half of the full value to the full value.

When the act of June 29, 1921, became effective the pension fund which had been maintained in the city of Chi-

cago under the act of June 29, 1915, was transferred to the new annuity and benefit fund created by the later act and was thereafter administered under that act. The money paid into the new as well as the old fund was obtained, in part, by a tax levied upon the taxable property in the city. Seven hundred twenty-eight former policemen of various ranks receive pensions based upon disability, age and service, pursuant to the provisions of the act of June 29, 1915, as amended and in force prior to July 1, 1921.

The amendments to sections 3 and 4 of the act of June 29, 1915, and to section 50 of the act of June 29, 1921, increase the pensions theretofore paid to retired policemen. The amendments to sections 11 and 51 of the act of June 29, 1921, authorize increased taxation for the purpose of providing additional revenue to pay the larger pensions. Appellant contends, first, that an increase in the pension of a retired public employee serves no public purpose and is a mere private gratuity; and second, that such an increase violates section 19 of article 4 of the constitution, which provides, among other things, that "the General Assembly shall never grant or authorize extra compensation, fee or allowance to any public officer, agent, servant or contractor, after service has been rendered or a contract made."

The establishment and maintenance of a system of pensions is not a public duty or obligation,—it is merely a question of policy, to be determined by the law-making body. The General Assembly may well believe that by such a system the public will be benefited, first, by encouraging competent and faithful employees to remain in the service and refrain from embarking in other vocations; and second, by retiring from the public service those who by devoting their best energies for a long period of years to the performance of duties in a public office or employment, have for that reason, or because of advanced age, become incapacitated from performing the duties as well as they might be performed by others more youthful or in greater physi-

cal or mental vigor. (1 Dillon on Mun. Corp.—5th ed.—sec. 430.) These considerations, however, have no application to public officers or employees who are not in the public service at the time a pension system is established or when increases in pensions are granted. Hence the question whether pensions granted to retired public officers or employees may be increased after their periods of service have ended is distinct and different from the question of the power to provide pensions for public officers and employees in the active service.

Increases in pensions to retired public officers and employees often nullify appreciably the public benefits derived from general pension laws by depleting the funds rightfully applicable to the payment of the pensions of officers and employees in the active service when they ultimately retire. Hence such increases serve no real public purpose. Judge Dillon, in his work on Municipal Corporations, (5th ed. sec. 430,) says: "But to be valid under constitutional requirements, the pensions must be conferred upon persons *who at the time* of receiving the right to them are officers or employees of the municipality. They cannot be conferred upon persons who had, previously to the grant, retired from the service of the city. A pension to such persons is an appropriation of public funds for the benefit of individuals and a gift or gratuity." So far as the retired policemen who were pensioners prior to the passage of the amendatory acts are concerned, the additional payments authorized by those acts are mere gifts or gratuities to individuals. (*People* v. *Abbott,* 274 Ill. 380; *Matter of Mahon* v. *Board of Education,* 171 N. Y. 263; *People* v. *Partridge,* 172 id. 305; *Mead* v. *Acton,* 139 Mass. 341; Gray on Limitations of the Taxing Power and Public Indebtedness, sec. 338.) In these respects the amendments authorize the raising of money by taxation for the exclusive benefit of particular persons and appropriate public money for a private purpose. It is well settled that taxes

can be levied for public purposes, only, and that the exer: cise of the taxing power for merely private purposes is beyond the authority of the State. *Savings and Loan Ass'n* v. *Topeka,* 20 Wall. 655; *City of Parkersburg* v. *Brown,* 106 U. S. 487; 1 Cooley on Taxation, (4th ed.) sec. 174.

The amendatory acts increasing the pensions of retired policemen do not contemplate the rendition of additional services by the pensioners. They were paid when they performed their services and the amounts of their pensions were fixed by law when they retired. The increases are not granted for services to be performed by the pensioners, but have as their sole basis or justification the services which they rendered prior to their retirement. The obligations which the performance of those services imposed upon the public have been fully discharged. No obligation, either legal or moral, to pay more than the stipulated compensation arises where no additional services have been or will be rendered. Extra compensation is a payment or allowance in excess of that which was fixed by law or contract when the services were rendered. Since the increases in the pensions of retired policemen sought to be effected by the amendatory acts in question are based solely on the services rendered by them prior to their retirement, these increases necessarily constitute an extra allowance for past services. Such an allowance section 19 of article 4 of the constitution expressly forbids, and the amendments to sections 3 and 4 of the act of June 29, 1915, and to section 50 of the act of June 29, 1921, increasing the pensions paid to retired policemen, are therefore void.

The decree of the superior court is reversed and the cause is remanded to that court, with directions to enter a decree in conformity with the prayer of the bill.

*Reversed and remanded, with directions.*