(No. 22834.—)

JEANNE C. BERMAN, Appellant, vs. THE BOARD OF EDUCA-
TION OF THE CITY OF CHICAGO et al. Appellees.

*Opinion filed April 17, 1935—Rehearing denied June 11, 1935.*

FARTHING, J., specially concurring.
SHAW, J., dissenting.

MARKMAN, DONOVAN & SULLIVAN, (HENRY O. NICKEL, of counsel,) for appellant.

WILLIAM H. SEXTON, Corporation Counsel, and RICHARD S. FOLSOM, (FRANK S. RIGHEIMER, JOSEPH F. GROSSMAN, RALPH W. CONDEE, and FRANK R. SCHNEBERGER, of counsel,) for appellees.

Mr. JUSTICE ORR delivered the opinion of the court:

Jeanne C. Berman, appellant, filed her bill of complaint in the circuit court of Cook county to enjoin the board of education of the city of Chicago from issuing bonds in the sum of $10,000,000 for the purpose of paying tax anticipation warrants. The bonds were to be issued under the provisions of an act of the General Assembly purporting to authorize the board of education of any school district, in any city having a population exceeding 500,000 inhabitants, to issue bonds to pay tax anticipation warrants where the taxes anticipated had not been collected. A motion in the nature of a demurrer was sustained and the bill was dismissed for want of equity. From that decree the present appeal was taken.

Appellant, a citizen, resident and tax-payer of Chicago, alleged in her bill that Chicago comprises one school dis-

trict; that she owns both real and personal property within the district which has been subject to all past taxes and will be subject to all future taxes levied therein, and that she has fully paid all of her taxes, including those anticipated by the tax warrants in question. She alleged that pursuant to the supposed authority given by the act in question the board of education on January 24, 1934, passed a resolution for the issuance and sale of bonds in the amount of $10,000,000 for the purpose of paying outstanding tax anticipation warrants drawn against the taxes for the years 1928 and 1929, and that at the request of the board of education the city of Chicago passed, and the mayor signed, a certain ordinance ratifying the resolution of the board and providing for the issuance of the bonds. The bill further alleged that the tax anticipation warrants in question were not obligations of the board of education, but, on the contrary, were payable solely out of the taxes anticipated by them, if and when collected, and not otherwise; that the use of the proceeds of the sale of such bonds, or their exchange in retirement of tax anticipation warrants, would amount to an appropriation of money for the purpose of paying a contract which by its terms is not an obligation of the board of education, and that the act of the General Assembly, the resolution of the board and the ordinance of the city of Chicago are each in direct violation of section 2 of article 2, section 14 of article 2 and section 9 of article 9 of the constitution of this State. The bill further alleged that defendants were preparing to carry out these objects and would do so unless enjoined; that the ordinance and the act of the legislature should be decreed to be void as violative of the constitutional provisions above mentioned; that the act was by its terms retroactive and authorized the appropriation and use of moneys by municipalities for private rather than corporate purposes; that it altered the obligation of contracts created by tax anticipation warrants, and by implication attempted to give mu-

nicipalities the right to create a debt, within the constitutional meaning of section 12 of article 9 of the constitution, without any consideration therefor.

The act relied upon as authority for issuance of the bonds in question was passed by the legislature in 1933, (Smith's Stat. 1933, chap. 122, pars. 327*i*-327*p*; Cahill's Stat. 1933, chap. 122, par. 410 (4);) and sections 3 and 6 thereof were amended in February, 1934. (Laws of 1933-34, first, second and third special sess. p. 241.) The act provides that where the corporate authorities of a school district in a city having a population exceeding 500,000 inhabitants shall have levied taxes for educational or certain other purposes and shall have sold anticipation warrants against such taxes, and where the taxes have not been paid or collected in amount sufficient to pay the warrants and interest thereon, the board of education may, with the consent of the city council, subject to certain limitations, issue bonds for an amount sufficient to pay the warrants, with interest, remaining outstanding and unpaid twelve months following the month in which the taxes became due. The bonds are to bear interest at a rate of not more than six per cent, to mature within twenty years, and may be issued without submitting the question to a vote of the people. The city council is required to levy a tax, to be paid annually, upon all taxable property of the district sufficient to pay the principal and interest of the bonds. The proceeds of the bonds are required to be kept separate for payment of the proper warrants and for placing the excess in the bond and interest sinking fund of the board of education, to be used for paying the principal and interest of the bonds, and for the proportionate abatement of subsequently levied taxes with such money as may remain after the payment of all warrants. It is stated that the authority granted by the act shall be considered as cumulative and not as repealing any existing laws. Section 8 states the purpose of the act in the following lan-

guage: "This act is adopted for the purpose of empowering the corporate authorities of such school district to recognize the moral, equitable and honorable obligation resting upon such school district and its inhabitants to pay such tax anticipation warrants in spite of the non-collection of the taxes constituting their source of payment and to assume as a legal obligation such moral obligation in like manner as a just person recognizes in his own affairs, the duty to re-pay money received and used for his own benefit, having in mind the benefits to said school district and its inhabitants resulting from the purchasers of such tax anticipation warrants furnishing money to maintain and operate the public schools therein."

Tax anticipation warrants are issued pursuant to statutory authority, which provides the circumstances under which they may be issued, the amount permitted to be outstanding; and, in part, prescribes the form and wording of the warrants themselves. (Smith's Stat. 1933, chap. 146½, sec. 2.) They may be issued only against taxes already levied, and the statute in mandatory terms requires "that warrants drawn and issued under the provisions of this section shall show upon their face that they are payable solely from said taxes when collected and not otherwise," etc. Such warrants do not constitute, and cannot be construed as constituting, any promise of payment, either express or implied, on the part of the taxing body issuing them, but the holder thereof "must rely solely upon the ability and fidelity of the revenue officers in the collection and payment of the money mentioned in the warrants." (*Fuller* v. *Heath,* 89 Ill. 296.) We have held that it was the intention of the legislature, in so providing, to make it clear that tax anticipation warrants do not constitute an obligation between the taxing body and the purchaser or holder thereof. (*City of Springfield* v. *Edwards,* 84 Ill. 626; *Coles County* v. *Goehring,* 209 id. 142.) The legal effect of the transaction is that the person receiving such

warrant discharges the corporation from all liability on account of the services or obligation for which it was drawn. (*Law* v. *People*, 87 Ill. 385; *Hodges* v. *Crowley*, 186 id. 305.) When the warrant is issued and accepted or sold the transaction is closed on the part of the municipality, leaving no future obligation upon it, either absolute or contingent, whereby its debt may be increased. (*Booth* v. *Opel*, 244 Ill. 317; *People* v. *Nelson*, 344 id. 46.) The transaction is similar to that of a bank selling a note "without recourse." The holders of tax anticipation warrants must look to the specific fund set apart for the payment of their warrants, as the cases above cited are authority that tax anticipation warrants are not contracts and the municipality is not indebted as a result of their issuance. The legislature itself recognized that the outstanding tax anticipation warrants were not legal obligations of the board of education, for it clearly appears from language used in section 8 of the act that authority to issue bonds was based upon the satisfaction of a moral, rather than a legal, obligation. It therefore becomes necessary to inquire whether the legislature has the power to authorize a school district to issue bonds and assume a legal liability for the payment of what it characterizes as "a moral, equitable and honorable obligation." The determination of this question will settle the principal issue in this case.

It is claimed by appellees that section 1 of article 8 of the Illinois constitution imposes a mandatory duty upon the legislature to "provide a thorough and efficient system of free schools," by which, as a matter of public policy, they say it is required to enact legislation authorizing the payment of a debt for which the city was at first only morally liable, but which, upon validation by legislative enactment, the courts are powerless to question. Their basic argument is that there is no constitutional limitation, express or implied, upon the power of the General Assembly permitting a school district to recognize a moral obli-

gation as one of legal and binding effect. True it is that we have held that the power of the legislature to enact laws to establish and maintain school systems is not subject to judicial review unless some limitation imposed by the constitution is exceeded. (*Fiedler* v. *Eckfeldt*, 335 Ill. 11; *Keime* v. *Community High School District*, 348 id. 228.) But in the exercise of this power the legislature is primarily bound by certain constitutional limitations. One of these (section 9 of article 9) is a limitation upon powers which the General Assembly may confer upon corporate authorities of cities, towns and villages with reference to local improvements and taxes. After authorizing the General Assembly to enable cities, towns and villages to make local improvements by special assessment or special taxation it provides: "For all other corporate purposes, all municipal corporations may be vested with authority to assess and collect taxes; but such taxes shall be uniform in respect to persons and property, within the jurisdiction of the body imposing the same."

The principle is well established that all taxation by municipal authorities must be for corporate purposes. (*Wetherell* v. *Devine*, 116 Ill. 631.) At times some difficulty is experienced in determining whether a given appropriation is for a corporate purpose. In the present case, however, no such difficulty exists, as we have repeatedly held that the holders of tax anticipation warrants have no claim against the municipality. The General Assembly cannot confer upon a municipality the power to issue bonds for an illegal purpose or for the purpose of paying a debt not incurred by the exercise of some authorized corporate function or purpose. At various times we have reiterated this principle. We have held that a tax imposed for the payment of a debt not incurred by the authority imposing the tax, and for the payment of which it is in nowise responsible, is not for a corporate purpose; (*Sleight* v. *People*, 74 Ill. 47; *Livingston County* v. *Weider*, 64 id. 427;)

that a city has no power to donate for private purposes revenue derived from license fees; (*Washingtonian Home v. City of Chicago,* 157 Ill. 414;) that it is beyond the corporate powers of a city to purchase special assessment bonds out of moneys derived from miscellaneous sources; (*City of Chicago* v. *Brede,* 218 Ill. 528;) that it is not a corporate purpose for a city to pay for the construction of sidewalks when the cost thereof has been provided for by special taxation or special assessment; (*Midland Lumber Co.* v. *City of Dallas City,* 276 Ill. 172;) that legislative enactment conferring power upon a municipality to grant pensions to persons who had retired from public service prior to the passage of the act was void because it was in the nature of a gift or gratuity to certain individuals and not for a corporate purpose. (*Porter* v. *Loehr,* 332 Ill. 353; *People* v. *Abbott,* 274 id. 380.) From these and numerous other authorities it seems clear that tax anticipation warrants are not debts and do not represent direct legal obligations of the municipality issuing them. It follows that an appropriation and levy for their payment must fail, since not for a corporate purpose. Where the money is not due as a result of any promise, contract or debt of the municipality, little justification can be found for an appropriation to pay private holders of tax anticipation warrants the moneys which they have failed to collect from the sources to which such collections are exclusively confined. An appropriation for such a purpose certainly could not be deemed an appropriation for a corporate purpose.

Another constitutional limitation upon the power of the General Assembly to vest the proposed taxing power in the corporate authorities here is found in the due process clause—section 2 of article 2. This section is violated if a citizen's money is taken from him under the guise of a tax for any other than a public purpose. (*Chicago Motor Club* v. *Kinney,* 329 Ill. 120.) Under this section a law must be binding upon and affect alike each member of the

community of the same class. (*People* v. *Rathje*, 333 Ill. 304.) A statute violates also the due process clause of the constitution if it results in taxation for other than corporate purposes, as prohibited by section 9 of article 9. (*Mathews* v. *City of Chicago*, 342 Ill. 120.) The appellant here paid her taxes and had every reason to believe, both on legal and moral grounds, that she would not again be taxed for the same purposes and for the same year under the guise of a bond issue which, in effect, was to pay the debt of certain defaulting tax-payers. The effect of this statute was to impose an unjust and unequal burden upon many tax-payers who had paid their taxes, requiring them to pay twice for the same object, and likewise discriminating in favor of those defaulting citizens who either failed or deliberately refused to carry their just share of the tax burden. It must be borne in mind that a certain moral obligation rests upon a municipality to protect its non-defaulting tax-payers from unjust and unequal tax burdens, such as would be imposed by the authorization of the bond issue in this case. The act contains no provision which allows a credit to all persons who had paid their taxes for the years in question. This omission, (*Fairfield* v. *People*, 94 Ill. 244,) and the obvious lack of uniformity as between persons and property of the same class or under similar circumstances, clearly renders the act unconstitutional. *People* v. *Rathje, supra.*

In arriving at this conclusion we have not failed to consider the cases cited and relied upon by appellees as authority to sustain the power of the General Assembly to pay a soldiers' bonus, to pay for injuries or for services rendered, to pay for volunteer advancements for the public welfare, to pay claims arising from depredations of war, and claims arising from the taking of private property to prevent disease. Claims and payments for any of these purposes, involving the public welfare and oft-times the public health and safety, have at times been justified under

the sovereign powers of the different States involved where there existed no constitutional inhibitions, but these cases offer no close analogies to the issues here presented.

In our opinion the act of the Fifty-eighth General Assembly, entitled "An act to authorize the board of education of any school district constituted by law in any city having a population exceeding 500,000 inhabitants to issue bonds to pay tax anticipation warrants where the taxes anticipated have not been collected and to provide for their payment," is unconstitutional and void, together with the ordinance passed pursuant thereto. The decree of the circuit court of Cook county is therefore reversed and the cause is remanded to that court, with directions to overrule the demurrer to the bill.

*Reversed and remanded, with directions.*

Mr. JUSTICE FARTHING, specially concurring: I agree with the result reached in this opinion and with the reasoning thereof except as to what is said therein with respect to double taxation.

Mr. JUSTICE SHAW, dissenting:

It is my opinion that the legislation which we are considering could be, and ought to be, sustained; that the legislature had the power, under the constitution, to permit the issuance of bonds for the purpose intended; that the opposite result of this case would be for the direct financial welfare of approximately one-half .the people of Illinois, and that the cases cited and reasons given for the judgment reached do not sustain it. I am therefore respectfully dissenting from the view of the majority and will briefly state my reasons.

It is first argued by counsel for the appellant that there was no obligation existing between the municipality and the holder of a tax warrant other than that of a trustee to see to it that the .funds collected are applied to the pay-

ment of the outstanding warrants. They cite the cases of *City of Springfield* v. *Edwards,* 84 Ill. 626, *People* v. *Nelson,* 344 id. 46, and others, to the effect that tax anticipation warrants are not contracts and that the municipality is not indebted on account of having issued them. From this premise they argue that the act in question is unconstitutional because it authorizes the board of education to issue bonds to pay tax anticipation warrants, which are not obligations of the municipality. They say this amounts to the appropriation of money for a private and unlawful purpose rather than a proper corporate purpose; that it imposes upon the tax-payer who has paid his taxes an unjust burden; that it is lacking in uniformity as to other members of the community who have not paid their taxes, and that it amounts to double taxation as against the tax-payer who has paid, requiring him to pay twice for the same object. Reference is made to section 2 of article 2 of the constitution, which requires that taxes must be uniform in respect to persons and property. It is said that in this case the taxes levied and for which the tax anticipation warrants were issued designated the purposes for which the moneys collected would be used; that the appropriation ordinance and the levy ordinance, under which those taxes were levied, gave notice to the tax-payers that the moneys collected would be used for the purposes specified; that the holders of the tax anticipation warrants who advanced the moneys knew that their warrants would be redeemed by the moneys collected from the tax-payers for the purposes specified in the appropriation and levy ordinances. From this premise it is argued that the payment by any tax-payer of his taxes for the years represented by the anticipation warrants completely satisfied his obligation to the municipality and completely paid his *pro rata* part of the outstanding anticipation warrants; that when the appellant paid her taxes and satisfied her debt to the munici-

pality she redeemed her share of the outstanding warrants and should not be taxed again in respect thereto.

It is further argued by the complainant that section 2 of article 2 of the constitution also prohibits a municipality from appropriating money for any but a corporate purpose; that this appropriation is not for a corporate purpose because of the fact that the tax anticipation warrant created no direct liability on the part of the school district, and the warrant on its face limits the holder to his claim to a particular fund, and limits his right to payment from that fund and nothing more. On this branch of the case appellant cites *Midland Lumber Co.* v. *City of Dallas City*, 276 Ill. 172, holding it not to be a corporate purpose for a city to pay for the construction of sidewalks when the construction cost thereof had been provided for by special assessments; *City of Chicago* v. *Brede*, 218 Ill. 528, where it was held that a city has no power to purchase special assessment bonds out of moneys derived from miscellaneous sources; *Washingtonian Home* v. *City of Chicago*, 157 Ill. 414, holding that the city of Chicago had no power to donate for private purposes revenues derived from licenses; *Sleight* v. *People*, 74 Ill. 47, holding that a tax imposed for the payment of a debt not incurred by the authority imposing the tax, and for the payment of which it is not liable, was not for a corporate purpose; *Board of Supervisors* v. *Weider*, 64 Ill. 427, to the same general effect as the *Sleight case;* and *Porter* v. *Loehr*, 332 Ill. 353, invalidating a tax for the purpose of increasing the pension of a retired public employee.

The appellant also claims that the act violates section 9 of article 9 of the constitution, which requires that all municipal taxes must be uniform in respect to persons and property within the jurisdiction of the body imposing the tax, it being claimed that the act in question permits the imposition of a double burden for a single object, upon which branch of the case the appellant cites and relies upon

*City of Chicago* v. *Collins,* 175 Ill. 445. The force and object of this citation are not perceived, as the only holding in that case pertaining to taxation was to the effect that a wheel tax of the city of Chicago imposed upon vehicles which had been specifically taxed as personal property amounted in that case to double taxation and was declared illegal.

That portion of appellant's argument which demonstrates that tax anticipation warrants are not debts and do not represent a direct legal obligation of the municipality issuing them must be conceded to be sound, and it is therefore necessary to inquire as to whether or not all the other contentions made by her necessarily follow from that premise. The real question for our decision, then, is this: Does the constitution prevent the legislature from authorizing its creature, the school district, to assume as a legal liability an outstanding moral obligation? The answer to this question determines the issues in this case, and I believe that answer is to be found by determining whether or not such an assumption of liability is for a corporate purpose.

Although its outlines are indistinct and its boundaries at times difficult of exact discernment, the field of corporate purpose is large. In *Taylor* v. *Thompson,* 42 Ill. 9, Justice Lawrence said, speaking for the court, that taxes are for a corporate or municipal purpose if the money is to be expended in a manner which shall particularly promote the general prosperity and welfare of the municipality levying them. In *Chicago, Danville and Vincennes Railroad Co.* v. *Smith,* 62 Ill. 268, it was held that a township donation to a railroad, made under legislative authority and under sanction of a majority vote of the people, was a corporate purpose for which the township authorities could assess a tax. In that opinion we said: "It is contended that the appropriation was not for a 'corporate purpose.' If it was for a public purpose—for the benefit of the inhabitants of

the municipality—then it would be for a corporate purpose. The latter cannot be distinguished from the former, and all that we have said in relation to the public purpose of the tax will apply with equal force to a corporate purpose." The court re-affirmed the statement of Judge Lawrence in *Taylor* v. *Thompson, supra.* To the same effect see, also; *Henderson* v. *Lagow,* 42 Ill. 360, and *Misner* v. *Bullard,* 43 id. 470.

As recently as the case of *Hagler* v. *Small,* 307 Ill. 460, in which we sustained the validity of a bond issue for the payment of bonuses to soldiers in the World War, in considering what constitutes a public or corporate purpose, we used the following language: "If the purpose be public it is so because it makes for the public weal. If such be the effect of it, the power to carry out such purpose does not rest on obligation to the individual but is found in the general welfare provision of the constitution, and is based upon the principle that the State is empowered to do that which it ought to do for the public good. Such purpose is not primarily concerned with the interest of the individual but with the welfare of the public as a whole." In his work on Constitutional Limitations Cooley states (sec. 129) that taxes should be levied only for those purposes which properly constitute a public burden, but that what is for the public good and what are public purposes, and what does properly constitute a public burden, are questions which the legislature must decide upon its own judgment and in respect to which it is vested with a large discretion, which cannot be controlled by the courts, except, perhaps, where its action is clearly evasive, and where, under pretense of a lawful authority, it has assumed to exercise one that is unlawful. In the briefs, many cases are cited from other jurisdictions, and a reference to any standard set of annotated cases will disclose more than a hundred adjudicated cases passing upon the question, in general, of what is and what is not a public purpose. An

examination of a large number of these cases indicates it to be the consensus of judicial opinion that such a purpose is not subject to exact definition. Without attempting such a definition, and for the purposes of this particular case, I feel that the prior decisions of our own court offer us sufficient guidance.

I am of the opinion that it is clearly a corporate purpose and in the interest of the welfare of the whole people to preserve the credit and future borrowing power of the school district in question. It is a matter of common knowledge, of which the court cannot pretend ignorance, that practically all of the municipal tax-imposing bodies of the State utilize tax anticipation warrants from time to time, most of them being entirely dependent on this source of funds during the latter part of each tax year. Even if the salutary principles of equity and common honesty were to be disregarded, the plainest and simplest considerations of policy should forbid impairment of this source of money if it can be avoided.

While it must be admitted, as contended by the appellant, that the district was not technically liable on the warrants as for a promise, yet it must also be admitted with equal candor that the district hired the use of the money, at an expense for interest, as a convenience to itself in its use and a detriment to the warrant holder who made the advance. It must also be admitted that but for such advancement during the recent economic crisis the schools could not have remained open. These elements, in my opinion, create not only a "moral obligation," but one which verges upon a legal liability so closely that the distinction can be found only in the strict letter of the instrument by which the use of the money was obtained. The situation of the district is analogous to that of a borrower who has secured his lender by some instrument which is so technically defective as to be unenforceable. Although he might

be able to defeat payment by standing on his legal defenses, yet if he has due regard for sound morals, and even the slightest interest in maintaining his credit for future use, he will find·some means to discharge the obligation. It is inconceivable to me that what an honest man who wishes to protect his personal credit would do for himself can not be done by a municipal corporation, when the legislature, which is the fountain of all its power, says that it may. The only perils to be perceived in such a procedure lie in its unrestrained multiplication, and this is effectually guarded against by the constitutional limitation upon the total indebtedness which may be incurred.

The cases of *Midland Lumber Co.* v. *City of Dallas City, supra, City of Chicago* v. *Brede, supra,* and the other cases above mentioned as being relied upon by appellant, are not in conflict with this conclusion on this question. The taxes imposed in those cases were without specific legislative authority, whereas the tax in this case is pursuant to a direct grant of power. Neither is this conclusion in any way in conflict with the constitutional prohibition which prevents the General Assembly from imposing taxes upon municipal corporations, or the inhabitants or property thereof, for corporate purposes. The tax in this case is not imposed by the General Assembly but by the local taxing bodies, pursuant to authority but not to any command of the General Assembly. Sections 9 and 10 of article 9 of the constitution were carefully considered by this court in *Wetherell* v. *Devine,* 116 Ill. 631, and in that case we used the following language, referring to the previous decisions of this court and of the Supreme Court of the United States: "The decisions in these cases lay down three propositions as clearly deducible from the sections here quoted: First, the General Assembly cannot grant the right to assess and collect taxes to any other than the corporate authorities of the municipalities or districts to be

taxed; second, taxation by such municipal or corporate authorities must be for corporate purposes; and third, such taxation cannot be imposed without the consent of the tax-payers to be affected." The legislation before us violates none of these principles.

The appellant's remaining contention is that this legislation constitutes double taxation, but the authorities fail to sustain such an argument. In 1 Cooley on Taxation, (4th ed.) sec. 223, we find the general rule in this respect stated in the following language: "Direct duplicate taxation, and by this is meant 'double taxation' in the strict legal sense of the term, means taxing twice for the same purpose, in the same year, some of the property in the territory in which the tax is laid, without taxing all of it a second time. * * * To constitute double taxation, objectionable or prohibited, the two or more taxes must be (1) imposed upon the same property; (2) by the same State or government; (3) during the same taxing period; and (4) for the same purpose." By whatever name it may be called, the purchasing of these outstanding tax warrants and the issuance of bonds in place of them amount to nothing more nor different than a refunding operation, and such operations have never been found objectionable as constituting double taxation, although it is quite obvious that in every case of refunding the same property will be again taxed for a purpose for which it had presumptively been taxed before. *City of Quincy* v. *Warfield,* 25 Ill. 317; *Kane* v. *City of Charleston,* 161 id. 179; *People* v. *Atchison, Topeka and Santa Fe Railway Co.* 356 id. 251.

In my opinion the legislature was within its constitutional limits and the decree below should be affirmed.