(No. 28311.—

INDIANA HARBOR BELT RAILROAD COMPANY, Appellant, *vs.* THE CITY OF CALUMET CITY *et al.,* Appellees.

*Opinion filed September 19, 1945—Rehearing denied Nov. 15, 1945.*

SCHNACKENBERG, HANSEN & TOWLE, (ELMER J. SCHNACKENBERG, of counsel,) both of Chicago, for appellant.

ARTHUR A. SULLIVAN, MARKMAN, DONOVAN & SULLIVAN, LEONARD C. MEAD, HOWARD B. BRYANT, and CHAPMAN & CUTLER, (HENRY O. NICKEL, of counsel,) all of Chicago, for certain appellees; WILLIAM J. TUOHY, State's Attorney, (JACOB SHAMBERG, and FRANCIS S. CLAMITZ, of counsel,) all of Chicago, for other appellees.

Mr. JUSTICE MURPHY delivered the opinion of the court:

This appeal is prosecuted by Indiana Harbor Belt Railroad Company to reverse a decree of the superior court of Cook county, which dismissed its complaint for want of equity. The railroad company is a taxpayer of the city of Calumet City and instituted this action on behalf of itself and other taxpayers similarly situated, to enjoin the city and its officials from carrying out the provisions of a city ordinance which provided for the issuance of bonds in the sum of $425,000, and to restrain the county clerk of Cook county from extending a tax for the payment of such bonds. The ordinance identified certain judgments against the city and directed the bonds be sold at par, plus accrued interest, and the proceeds prorated to the several judgment creditors, to be taken by them in full satisfaction of their claims, or, if the bonds were not sold within thirty days, that they be delivered *pro rata* to the judgment creditors upon condition that the same be accepted in full satisfaction of such judgments. The holders of the judgments were made parties defendant to this proceeding. They filed an answer and have followed the appeal to this

court and filed a brief. No brief has been filed on behalf of Calumet City or any of its officials. The county clerk has joined in the brief filed on behalf of the judgment creditors. The railroad company will be referred to as plaintiff, the city of Calumet as the city, and the judgment creditors as defendants. Constitutional questions are raised and the chancellor certified that the validity of a municipal ordinance was involved, and that, in his opinion, public interest required the appeal be taken direct to this court.

The principal controversy is as to whether the judgments were incurred for corporate purposes. In support of its contention that they were not for corporate purposes, plaintiff contends (a) that the statute under which the city council assumed the power to adopt the ordinance in question is unconstitutional, in that it undertakes to authorize the issuance of bonds for judgments other than for corporate purposes; (b) that the judgments were not incurred for corporate purposes, and (c) that the judgment indebtedness with other indebtedness of the city exceeds the city's constitutional debt limit. Defendants contend (1) that the plaintiff's attack upon the judgments is collateral and that questions as to whether they were incurred as corporate obligations for corporate purposes cannot be relitigated in this action, (2) therefore the constitutional attack made upon the statute is without merit; and (3) that the judgments sound in tort and that the constitutional prohibition against excessive indebtedness does not include judgments of that kind.

Plaintiff offered thirty exhibits in evidence, the greater part of which were exhibits of the decrees and evidence taken from the records in the actions in which the judgments were rendered. On the trial defendants contended, as on this appeal, that plaintiff's action was a collateral attack on the judgments and that such exhibits were irrelevant and immaterial. After admitting such exhibits sub-

ject to the objection, the chancellor sustained a motion to strike. Since plaintiff's evidence of its right to equitable relief rested upon the contents of the exhibits, they should have remained as a part of the record. The exhibits thus excluded have been incorporated in the record with plaintiff's offer of proof of the same and they will be treated as having been admitted as evidence. The pertinent evidence is found in such exhibits. Neither the city nor defendants introduced any evidence.

From the admissions made by the pleadings and the exhibits, it appears that during the period 1922-1929, the board of local improvements of the city initiated several local improvement projects under the Local Improvement Act which were carried through, the projects constructed and bonds issued for the payment of the cost thereof. Provision was made for the payment of the bonds by the levying of assessments against abutting property. As defaults occurred in the payment of certain installments of principal and interest thereon, defendants, who were the holders of many of such special assessment bonds, instituted equitable actions against the city in the circuit and superior courts of Cook county. They contended for the applicability of the principles of the liability of the city as announced in *Rothschild* v. *Village of Calumet Park,* 350 Ill. 330, *Conway* v. *City of Chicago,* 237 Ill. 128, and other cases. Defendants state there were 179 of such actions. The ordinance in question shows that the bonds involved in this case were to be applied to only eight. As to title, date of judgment and amounts they are as follows: Jayne W. Hotchkiss *et al.,* August 11, 1938, $159,411.59; Bigler *et al.,* December 28, 1938, $13,823.41; Albers, as Receiver of two State banks, March 31, 1939, $10,592.34; Fulton *et al.,* October 25, 1939, $1,929.58. Four of the actions thus started were consolidated and, on December 29, 1939, a decree was entered fixing the total due in the four actions

at $305,967.87. The total of the eight judgments was $491,724.79, plus costs.

The judgments were not paid and, on June 7, 1940, a *mandamus* action was started in the circuit court of Cook county by some of such judgment creditors. They sought to command the city and its corporate authorities to take official action to satisfy such judgments. On December 20, 1940, an order was entered which directed that a writ of *mandamus* issue, commanding the city and the corporate authorities to pass an ordinance for the issuance of bonds in the sum of $493,354.95 for the purpose of funding such judgment indebtedness. A few days before the order was entered, the city council, by a divided vote, adopted a resolution which directed that no appeal should be prayed on behalf of the city from any order to be entered in the *mandamus* action. However, after the order of December 20, 1940, was entered, the mayor and two of the aldermen filed a notice of appeal and undertook to have the record of the *mandamus* action reviewed by this court. The motion of the judgment creditors to dismiss the appeal for want of sufficient interest in those filing the notice was allowed and the appeal was dismissed. *Hotchkiss* v. *City of Calumet City*, 377 Ill. 615.

On January 23, 1941, the city council passed an ordinance authorizing the issuance of bonds in accordance with the mandate of the writ entered in the *mandamus* action, but before its provisions could be executed the regular city election was held (April 15, 1941,) and a majority of the members of the old council were defeated and others elected in their stead. It appears that many of those elected possessed views as to the city's liability on the judgments which differed from those of the former council. The new council immediately repealed the ordinance and no further action was taken by the judgment creditors or the city council until in December, 1941. At that time,

proceedings were instituted in the *mandamus* action which resulted in the entry of a rule on the mayor, clerk, treasurer and aldermen of the city, requiring them to show cause why they should not be punished for contempt for failure to comply with the peremptory writ of *mandamus*. Hearings were had in March, 1942, but before any order was entered a majority of the aldermen agreed to enact an ordinance which would provide for bonds in the sum of $425,000. It appears that the defendants agreed to accept bonds in such amount in full satisfaction of their several judgments. Further action in the contempt proceeding appears to have been abandoned, for on January 28, 1943, the city council adopted the ordinance in question. The ordinance provided for the levy of a direct annual tax to pay the principal and interest on the bonds. As stated, this action is to enjoin the city and its officials from issuing the bonds and to restrain the county clerk from extending a tax to provide for their payment.

The constitutional question will be given consideration first. In adopting the ordinance, the city undertook to exercise a power conferred by sections 23-6 and 23-7 of the Revised Cities and Villages Act. (Ill. Rev. Stat. 1943, chap. 24, pars. 23-6, 23-7.) The first of these authorizes the corporate authorities of a city "to borrow money on the credit of the corporation for corporate purposes, and issue bonds therefor, * * *." It also directs that at the time of incurring indebtedness, provisions shall be made for the payment of the same by a direct annual tax. The second empowers the corporate authorities "to provide for the consolidation or refunding of maturing bonds and the funding of judgment debts, and to issue bonds in place of maturing bonds or judgment debts." Plaintiff construes these provisions as empowering corporate authorities to issue bonds for the satisfaction of judgments which have been incurred for other than corporate purposes and urges that as to such powers the statute is unconstitutional in

that it violates sections 9 and 12 of article IX of the State constitution and the due-process clauses of the State and Federal constitutions. If the statute undertook to confer such power, it would be in violation of the constitutional provision, (*Berman* v. *Board of Education,* 360 Ill. 535,) but the language of the statute does not permit such construction. In the first section, the power to be exercised is expressly limited to corporate purposes. If it should be determined that a judgment debt for which bonds were to be issued was not incurred for corporate purposes, then the construction of the statute would necessarily be that the corporate authorities were without power to act. The statute does not violate the constitutional provision as charged.

The purpose of the action was to keep plaintiff's property located in the city free from the tax liability that would be imposed if the bonds were issued and the tax extended as proposed by the ordinance. The bonds, or, in the event of a sale, the proceeds, could not be applied to any purpose except the satisfaction of the judgments described in the ordinance. If the indebtedness evidenced by the judgments was for other than corporate purposes, then the judgments were not valid obligations of the city. To reach the objective of keeping its property free of the tax, plaintiff attacks the judgments, claiming that the city was not liable for the amounts for which the several judgments were rendered. This raises a question as to how far plaintiff is bound by the litigation which resulted in the judgments against the city.

The rule is well settled that when a judgment is rendered against a city in the corporate name, such judgment, in the absence of fraud or collusion, is binding upon the taxpayers of the city. This is founded on the principle that their interest in defeating the judgment is the same as the city and that, through the city, they have a representative authorized and capable to speak for them and

to protect their interest against the demands of the third party. (*Healy v. Deering,* 231 Ill. 423; *Carney v. Village of Marseilles,* 136 Ill. 401.) It is considered that every taxpayer is a real, though not a nominal, party to such a judgment. *People ex rel. Dorris* v. *Ford,* 289 Ill. 550; *Harmon* v. *Auditor of Public Accounts,* 123 Ill. 122.

However, when the reason for application of the principle of privity between the taxpayer and city fails, the rule stated has no application. A taxpayer is entitled to equitable relief from the judgment entered against the city when it appears that his case comes within some of the recognized grounds for which a court of equity assumes jurisdiction, such as fraud of either of the parties to the judgment or the collusion of both. A judgment or decree, procured through the collusion of the plaintiffs to the judgment action and the corporate authorities of a city or their agents, for the purpose of defrauding the taxpayers, is subject to collateral attack by a taxpayer whenever and wherever it comes in conflict with his rights as a taxpayer. As to the conclusiveness of a judgment fraudulently obtained, it was said in *Atlas Nat. Bank* v. *More,* 152 Ill. 528: "Fraud is not a thing that can stand, even when robed in a judgment." These general principles were given application in *Green* v. *Hutsonville School Dist.* 356 Ill. 216. A taxpayer is not estopped by a consent judgment entered upon an unlawful contract. (*People ex rel. Graff* v. *Chicago, Burlington and Quincy Railroad Co.* 247 Ill. 340.) A judgment or decree entered against a municipality or *quasi*-municipality which is not founded on a legal liability will not estop the taxpayer from attacking it. (*Leviton* v. *Board of Education,* 374 Ill. 594.) In this case the initial inquiry is as to whether the evidence shows that defendant's judgments were procured under circumstances which permit plaintiff as a taxpayer to attack them in this proceeding.

Plaintiff recognizes the general principles stated, and seeks to make its case by showing that the official action of the city council in reference to such judgments indicated a desire on its part that judgments should be entered against the city. In this connection, attention is called to the city's employment of special counsel to represent the city and his conduct of the defense, the failure of the city counsel to perfect appeals in the various matters and the inclusion of certain items as claims against the city upon which the judgments were entered.

Unless there was fraudulent design, the employment of special counsel to represent the city was a matter which rested in the discretion of the city council. Parts of the records of the Hotchkiss case are in evidence, and it appears from such records that the claimed liability of the city arose from bonds issued and assessments collected in forty-five local improvement projects. The total of vouchers and bonds issued was $3,063,810.59. The complaint charged that the city had violated its duties in collecting and distributing the special assessments, in that it did not keep the principal separated from the interest, that it commingled the money collected on the several improvement projects; that it paid part of the money collected to bondholders without heed to the priority rights of others, and that it failed to keep the funds collected in a sound depositary, and as a result large amounts were lost when the bank was closed for liquidation. It is obvious that the questions thus presented and the amount claimed from the city were matters of such importance to the city as to warrant the employment of able counsel to represent it, so the mere fact special counsel was employed and that he entered the appearance of the city in the court is no evidence that his employment was prompted by improper motives on the part of the corporate authorities.

Plaintiff offered to introduce in evidence six paragraphs taken from the complaint in the Hotchkiss case. There

were other paragraphs but the number or their contents or the prayer is not shown.

Defendants' answer, the master's findings and the decree show that the action was instituted to require the city to account as trustee of the special assessment funds collected and distributed by it. The answer filed by special counsel on behalf of the city purported to answer nineteen paragraphs of the complaint. Where issues of fact were tendered, the answer met them by a general denial but where the allegations of the complaint referred to records of the city council, the answer admitted such facts. The issue thus presented by the complaint and answer was as to whether the city was liable for the breach of its duties as trustee and required to account to the plaintiff in that action as holder of special assessment bonds. In short, it was an action to determine whether the city was liable under the principles announced in *Rothschild* v. *Village of Calumet Park,* 350 Ill. 330, and similar cases. The cause was referred to a master and the report of evidence which he made to the court was offered in this case. It appears that the city's special counsel joined in a stipulation setting forth a summary of facts taken from the court and city records in each of the forty-five local improvement proceedings. Such stipulation lessened the burden of the plaintiff in that action but it was in reference to matters about which there was no controversy and it presented facts to the court in a brief and concise manner. Included in the transcript of evidence was the testimony of Frank J. Nugent, a witness for Hotchkiss and coplaintiffs. He qualified as an accountant and testified as to the examination he had made of records pertaining to the special assessment proceedings and the issuing of bonds thereon. His evidence, in direct, covers more than fifty pages in this record and the cross-examination fourteen. It is not within the scope of this inquiry to verify his figures or to determine whether he applied the right principles in arriving at

the conclusions he drew from such account. Reference has been made to the pleadings of the Hotchkiss case, transcript of evidence and other parts of the record for the purpose of ascertaining whether there was anything appearing on the face of the record that would tend to show constructive fraud or that there was collusion and connivance between the corporate authorities, Hotchkiss and coplaintiffs. If fraud or collusion was established, then equity would relieve plaintiff, as a taxpayer, from the effect of the judgment entered against the city. But even though it was found that there was fraud and collusion, the taxpayer's suit could not serve as a mere review of the conclusions and findings in the former action. It would be a new suit and would have to be prosecuted as such.

There are other matters strongly emphasized by plaintiff to which reference should be made. An allegation in the complaint in the Hotchkiss case was to the effect that the city had deposited the special assessment collections in a depositary which the city officials knew was not financially sound. The evidence is that when the auditor closed the bank for liquidation, the balance in the city's account was $171,000, and the master, in determining the amount due, included said sum as a part for which the city was liable. Plaintiff states that this item constituted 5½ per cent of the city's judgment liability and that in view of the allegation contained in the complaint and the conclusions of the master, the city was held to a higher degree of care in selecting a depositary than that which rests upon trustees generally.

The Public Construction Company was awarded many of the contracts to construct the improvements provided for in the various proceedings. Included therein was proceeding No. 173, which provided for an extensive improvement. The ordinance in that case provided that the contractor was to receive bonds in payment for his ser-

vices. The master found that more than $1,200,000 in bonds had been issued and were outstanding when the city took from the funds which it had collected from the property owners and paid the contractor $15,143.77. Other cash payments were made to the contractor, totaling $136,294.93, all of which were paid at a time when there were bonds outstanding and unpaid. The master found that such payment in cash was a breach of the city's duty as trustee. The report did not. set forth the name of the contractor, but, in computing the amount due from the city, he included $30,500 as the amount that was due the contractor on bonds held by it. The omission of the contractor's name does not appear to have been accidental but rather it was designedly done for the purpose of withholding his name from the proceedings. Plaintiff attaches much significance to this irregularity. Attention is also called to the fact that the city authorized its special counsel to enter its appearance in the case and that the city counsel took action to forestall any appeal from the judgment to be entered in the *mandamus* proceeding prosecuted by Hotchkiss and others against the city and its officials.

The defendants, other than Hotchkiss and coplaintiffs, engaged counsel other than those who appeared for the plaintiffs in the Hotchkiss case. The excerpts from the pleadings and records in the other cases are not materially different from those taken from the records in the Hotchkiss proceeding. This reference to the evidence will serve to show the character of the attack plaintiff makes upon defendants' several judgments.

There is no doubt but that the city had breached its trust in some respects and when the suits were started was liable to plaintiffs in those actions but it is equally clear that a more vigorous defense asserted on behalf of the city would have resulted in a lesser liability than that fixed by the judgment. There is nothing to indicate that any

part of the evidence introduced in the judgment actions was not true or that the city was taken by surprise as to any of such evidence or prevented by any rulings of court from interposing any defense it had pertinent to the claims made against it. Under such circumstances, can it be said that the failure of a city to assert every available defense to every claim made against it shall be accepted by a court of equity as evidence of a fraudulent purpose? If so, then, after a plaintiff has recovered his judgment against a city, a taxpayer may discover that the city should have defended on some other ground and then the judgment creditor of the city has the burden of relitigating his action in a taxpayer's suit brought to enjoin the collection of the judgment. Fraud cannot be presumed, nor can it be assumed that failure of the city or its special counsel to interpose every available defense is evidence of collusion or connivance with the claimant. Such failure will, without additional proof, be ascribed to a lack of knowledge of the city's rights rather than ulterior motives.

Plaintiff relies upon our holding in *Leviton* v. *Board of Education,* 374 Ill. 594. The cases are distinguishable on the facts and the principle applicable. As pointed out in the *Leviton case,* a school district, being a *quasi-*municipal corporation, cannot be held liable for the shortcomings of its officials. The claim which the Federal court had approved in that case was based upon a nonexisting liability. Furthermore, the officials of the school district had, in previous litigation with the taxpayers, taken the position that the school district was liable for the anticipation tax warrants and should issue bonds to pay the judgments entered thereon. The whole of the claim for which judgment had been entered in the Federal court was for a noncorporate purpose and one for which the school district could not, under any circumstances, be made liable. In this case, the actions in which the judgments were entered had a basis of liability upon which judgments could be entered

against the city. As the evidence developed in those cases, the only question was as to the amount of such liability. The conduct of the city, or of its special counsel in defending the action, tends to show either an indifference to the litigation or an ignorance of the city's rights. Neither amounts to constructive fraud for which equitable relief may be granted to the taxpayer. His remedy is through the ballot box.

Plaintiff's final contention is that when the city's existing indebtedness and the debts to be funded by the bond issue are combined, the total exceeds the city's constitutional debt limit. It is urged that the ordinance is void insofar as it provides for the issuing of bonds to fund such excess. Section 12 of article IX of the constitution is that "No county, city, township, school district or other municipal corporation, shall be allowed to become indebted in any manner or for any purpose, to an amount, including existing indebtedness, in the aggregate exceeding five per centum on the value of the taxable property therein, to be ascertained by the last assessment for state and county taxes, previous to the incurring of such indebtedness." The principal question is as to whether the constitutional provision includes debts such as those held by defendants against the city, and the conclusion we have reached on that question makes it unnecessary to consider whether the testing point as to amount of indebtedness is at the time the liability was incurred or when the judgments were rendered, or whether it should be on the date the bonds are issued. The evidence shows without dispute that the combined total, that is, the existing indebtedness and the defendants' debts against the city, exceeded the constitutional limit from December 31, 1931, to the end of the accounting period, December 31, 1939. It also appears that such excess varied from year to year but at the conclusion of the accounting period it was in excess of $400,000.

In *City of Bloomington* v. *Purdue,* 99 Ill. 329, plaintiff sued to recover damages for personal injury growing out of negligence on the part of the city. It was held that the city could not raise the question as to whether its then existing indebtedness was in excess of the constitutional limitation. The case of *City of Chicago* v. *Sexton,* 115 Ill. 230, was an action to recover for work done and materials furnished by plaintiff and used by the city in the construction of its city hall. In referring to the liability of the city for a breach of its duty to the plaintiff, it was said: "There is nothing new in thus holding a municipality responsible for the want of fidelity of those who act for it. * * * The liability thus imposed is not within the constitutional and statutory limitations in regard to the creation of indebtedness." *City of Chicago* v. *Manhattan Cement Co.* 178 Ill. 372, was an action on the case against the city to recover three fourths of the value of a quantity of cement alleged to have been destroyed in consequence of a mob or riot in the city. In considering the constitutionality of the statute which authorized a recovery from the city in case of damage done by mob or riot, it was held that whether the city was indebted beyond its constitutional limit is wholly immaterial. Also, see *City of Chicago* v. *Norton Milling Co.* 97 Ill. App. 651. The principle was recognized in *Elmhurst Nat. Bank* v. *Village of Bellwood,* 372 Ill. 204, but the cause was disposed of on a question which will not be considered in this case. The heading to an annotation in 94 A.L.R. 937 states the general rule is that constitutional or statutory limitations upon municipal indebtedness or upon the amount of municipal taxation refer only to obligations voluntarily incurred by the municipality and do not apply to those obligations sounding in tort. Reference is made to the cases cited in said annotation from other jurisdictions.

The city was trustee of the proceeds of all the special assessments collected by it and as such was charged with

the duty of making a proper application of·such proceeds to the payment of the bonds or vouchers for which the assessments had been made. The finding in defendants' actions against the city was that it had failed to perform its duties as trustee. Such breach of duty arose out of the wrongful act of its officials or agents who were charged by the city to handle and care for such trust fund. The city selected those who were to handle the funds and under the law became liable˙for the failure of such agents to make proper application of the moneys collected. The city's liability was imposed by law for a breach of its duty as trustee. There was no assent either express or implied. The defendants, as beneficiaries of the trust funds collected by the city, did not agree to substitute their rights in the bonds as primary obligations for an assumption of liability by the city. Their several suits were like the ordinary actions instituted by beneficiaries of a trust fund against the trustee to recover losses sustained by reason of a breach of trust.

Plaintiff contends that there was an implied agreement on the part of the city to repay the special assessments diverted, and cites *Conway* v. *City of Chicago*, 237 Ill. 128, where an action in assumpsit for money had and received was held to be proper in this kind of case. *Rothschild* v. *Village of Calumet Park*, 350 Ill. 330, was an action in equity to recover from the village moneys which it had collected from special assessments. It was contended that the plaintiff had an adequate remedy at law and that equity was without jurisdiction. It was stated that plaintiff's claim was for money had and received to the complainant's use and could be the basis of an action of assumpsit but the requirements for an accounting to determine the amount due gave a court of equity jurisdiction.

An action in assumpsit for money had and received may be based on a contract, express or implied, but the action is also an appropriate remedy in a class of cases

where there is no contract and in which none arises by implication of law. It is designated as a *quasi*-contract, and in *Board of Highway Com.* v. *City of Bloomington,* 253 Ill. 164, the court was considering the right of the plaintiff to maintain an action for money collected by the city which it had no right to receive, and which belonged to the plaintiffs. It was contended that the action of assumpsit could not be maintained for the reason that there was no contract, express or implied. It was said: "After subtracting express contracts and contracts implied in fact, there is still left another large class of obligations, to enforce which the action of general assumpsit is a well established remedy. The principle upon which this latter class of obligations rests is equitable in its nature, and was, like most other equitable principles, derived from the civil law. This obligation was under the civil law designated '*quasi-contractus.*' Stated as a civil-law principle, it was 'an obligation similar in character to that of a contract, but which arises not from an agreement of parties but from some relation between them or from a voluntary act of one of them, or, stated in other language, an obligation springing from voluntary and lawful acts of parties in the absence of any agreement.' * * * In *quasi* contracts the obligation arises not from consent as in the case of contracts, but from the law or natural equity. * * * The liability exists from an implication of law that arises from the facts and circumstances independent of agreement or presumed intention. * * * In this class of cases the notion of a contract is purely fictitious. There are none of the elements of a contract that are necessarily present. The intention of the parties in such case is entirely disregarded, while in cases of express and implied contracts in fact the intention is of the essence of the transaction." The right of a holder of special assessment bonds to bring an action in assumpsit for money had and received is based not upon consent of the parties but upon fiction which the.

law supplies. This is not the kind or character of an assent on' the part of the city that is covered by the constitutional provision. The constitutional provision which prohibits a city incurring an indebtedness in excess of a certain percent of the assessed value of its property does not apply to indebtedness of the kind which defendants hold against the city.

The decree of the superior court was correct and is affirmed.

*Decree affirmed.*