## TRUSTEES OF SCHOOLS OF TOWNSHIP 24, Etc.

*v.*

## TRUSTEES OF SCHOOLS OF TOWNSHIP 25, Etc.

1. SCHOOL TRUSTEES—*of one township liable to trustees of another, for money had and received to its use.* A congressional township was divided by a county line, so that the north half was in one county and the south half in another, but the school fund was held as a common fund, and distributed among the districts of the township in each county. The south half was united with the township adjoining it on the south as one township, under the township organization law. The counties both donated a portion of the proceeds of swamp lands to the school townships, and distributed it according to the geographical area in each. The portion of the fund belonging to the south half of the township divided by the county line, by order of the county authorities, came into the hands of the treasurer of the township to which it was joined under township organization, and afterwards the county board ordered such fund to be paid over to the treasurer of the township so divided by the county line, which at a meeting of the trustees of the two townships had been agreed should be done, if the county board would make such an order: *Held,* that upon refusal to comply with the order to pay over the money, by the treasurer and trustees in whose hands it was, the trustees of the township entitled to it could recover it from the trustees of the other township, in an action for money had and received.

2. SCHOOL DISTRICTS—*liable for money had and received.* School districts, like individuals, must, when they obtain and hold the money of another, be held to refund it.

APPEAL from the Circuit Court of McLean county; the Hon. THOMAS F. TIPTON, Judge, presiding.

Messrs. ROWELL & HAMILTON, for the appellants.

Messrs. WILLIAMS, BURR & CAPEN, for the appellees.

Mr. JUSTICE WALKER delivered the opinion of the Court:

It appears from the record in this case, that the south half of township 25 north, range 6 east, is situated in McLean county, and the north half in Livingston county; that it is organized as a school township, and that the school fund of the same is a common fund, and is distributed among the districts

therein in each county; that there was a large fund received by the county of McLean, on the sale of swamp lands, a portion of which the county authorities donated to the Normal University, and the remainder to the school townships, and distributed it according to the geographical area in each. Livingston county, having a similar fund, made a like distribution among the school townships in that county. According to the terms of this distribution, the school authorities of the various townships were required to hold and use this fund in the same manner as money arising from the sale of the sixteenth or school section.

It seems that township 24 and the south half of township 25, were united as one town, under the township organization law. The order on the agent of the county was, to pay the money over to treasurers of full townships, and they appointed George W. Freshcom to receive the fund for. township 24, and the south half of 25. He was directed to loan this fund, and pay the interest on schedules, two-thirds on schools taught in 24, and one-third on schools in the south half of 25; and he was required to pay the same, or deliver the securities therefor, to the school treasurer of township 24, when one should be appointed. A treasurer was subsequently appointed, and the fund was paid over to him.

In September, 1872, the county board of McLean county made an order that all of the swamp land school fund in the treasury of township 24, belonging to 25, be paid to the treasurer of schools in township 25, provided the swamp land school fund of the north half be, in like manner, paid into the treasury. And it is conceded that the fund for the north half in Livingston county was so paid into the treasury; and the school fund of township 25, subject to distribution, was paid out on schedules of schools taught in the township, as well in McLean as in Livingston county. The school trustees of the two towns met, and it was agreed that if the county board of McLean county would so order, they would pay to the treasurer of township 25 the proportion which it is conceded be-

longs to the south half of that township, with eight per cent interest, but on the order being passed they refused.

It appears that the sum received as principal for the south half of 25 is $1011.83, which has been kept loaned the greater part of the time, at ten per cent per annum. It also appears that this fund, or any part of it, was never distributed to schools taught in the south half of township 25, but on the presentation of one schedule so taught, payment was refused. The money was demanded both of the treasurer and the trustees, before suit was brought, but it was refused. The court below, having tried the cause by consent, found for plaintiffs the sum of $1416.22, and rendered judgment therefor, and defendants bring the case to this court on appeal.

All the grounds urged for a reversal are purely technical, there not being the slightest pretense that appellants have any legal or equitable claim to the money, as trustees of their township. It is perfectly obvious that they have not the slightest claim to the fund, and no one could hesitate to say that from the first it has belonged, in equity, and on the plainest principles of justice, to the inhabitants of the south half of 25. Yet, without the shadow of a rightful claim, it has been mixed with their own school fund, they have loaned it, and appropriated the proceeds to their own schools and funds, and when a schedule is presented from those to whom it was given, without any claim of right it is refused payment.

It is not claimed, in argument, that appellants have any legal claim to the fund, but that they received it in trust for the south half of township 25. They, by their past conduct, have not so held or treated it. Judging from their acts, they have held it as the fund of township 24, appropriated it to its use, and totally denied all trust, by refusing to pay any portion of the fund to those entitled to it.

We fail to see that there is the semblance of a trust. The money was placed by the county board in the hands of Freshcom, to hold until township 24 should become organized, and then pay it to the treasurer. In placing it in the hands of Freshcom, they declared that one-third belonged to the south

half of township 25; and in the order to pay the fund to the treasurer of 24, no trust was declared or conditions imposed, and the law would not imply a trust, but simply that the fund should remain in the hands of the treasurer, and under the control of the trustees, until the south half of township 25 should in some way become organized, or attached to some other organized territory, and then pay the fund to the authorities having control of that territory, for school purposes. This is the only reasonable inference to be drawn from the circumstances. When appellants received the money, it was with this implied obligation imposed.

The south half of township 25 became so organized by uniting with the north half, thus becoming a legal school township, and, as is conceded, it is entitled to this money. It is an elementary principle of the law, that the action of assumpsit for money had and received for the use of another, will lie whenever the defendant has received money which, in equity, belongs to the plaintiff. That these appellants have received money that equitably belongs to township 25, seems to us so obvious that the citation of authority or reasoning could not make it clearer. It looks to us to be evident.

But it is said that this money was paid to the treasurer as an individual, and the trustees controlled it as individuals, and the recovery should be had against them as individuals. The money was ordered to be paid to the treasurer, and not the individual holding the office; and he received it as treasurer, loaned it as treasurer, and the trustees ordered him to pay it out as treasurer. Nor did the trustees assume the control of the fund as individuals. All they did, so far as we can see, was as trustees and not as individuals.

But it is said that the treasurer had no power, as an officer, to receive the money, nor did the trustees have a right to control it as officers. To admit this position would be to hold that the corporation could be held liable for no wrongful act of its officers. If, through mistake, they should collect money not owing to the fund, and it were placed in the treasury, the corporation could hold it, and the person wronged would be com-

pelled to look to the individual officers for his money. It would be to hold that whatever funds found their way into the school treasury, they might hold it, however unjust or dishonest. Such can not be the law, as it shocks every principle of right. Such corporations, like individuals, must, when they obtain and hold the money of another, be held to refund it. There are many acts of such officers for which such corporations are not liable, but this is not of that class.

We perceive no error in the record, and the judgment must be affirmed.

*Judgment affirmed.*