RUSCH v. BAER et al.

No. 514.

District Court, N. D. Illinois, W. D.

March 23, 1937.

Charles H. Linscott, of Rockford, Ill., for plaintiff.

Carl Sheldon, of Sterling, Ill., for defendants.

WOODWARD, District Judge.

A national bank receiver is plaintiff. The defendants are the school treasurer and the trustees of schools, the township treasurer, the trustees of schools, school directors of ten school districts, boards of education of two school districts, and Roy R. Baer, individually.

The matter is submitted on bill, answer, and stipulation of facts.

On and prior to March 17, 1932, defendant Baer was the township treasurer of a certain township in Whiteside county, Ill., and as such was the legal depositary and custodian of school funds for money and also ex officio clerk of the trustees of schools of the same township. His term of office expired July 1, 1932, and he was thereafter elected and qualified as township treasurer for two successive terms ending, respectively, on July 1, 1934, and July 1, 1936. On March 17, 1932, a written agreement was entered into between the trustees of schools, the township treasurer, the First National Bank of Rock Falls, Ill., and the First Trust & Savings Bank of Sterling, Ill., which, in substance, provided that the Rock Falls bank should deposit with the Sterling Bank certain bonds to secure the deposits of the school moneys in the Rock Falls Bank. The bonds were deposited with the Sterling Bank and the school moneys were deposited in the Rock Falls Bank.

The Rock Falls Bank, a national banking institution, became insolvent, and on July 10, 1932 the Comptroller of Currency placed the plaintiff's predecessor in charge as receiver. At the time the receiver took charge the township treasurer had on deposit in the insolvent bank the sum of $10,856.43. Thereafter, pursuant to the instructions of the receiver, part of the securities on deposit with the Sterling Bank were sold and the proceeds thereof turned over to the township treasurer. The receiver made a final settlement with the township treasurer on September 26, 1932, paying him in cash, pursuant to the aforementioned written agreement, the balance of his deposit in the defunct bank. Upon the payment being made, the balance of the securities in the Sterling Bank, deposited pursuant to the agreement of March 17, 1932, were returned to the receiver.

On June 6, 1932, the deposit balance in the defunct bank was credited on the books of the township treasurer and belonged, with the exception of an immaterial portion thereof, to the several school districts in Whiteside county. The money so deposited was derived from taxes levied by and collected for the use of the several school districts and from distributive funds which had been distributed to the several school districts by the county treasurer, with an immaterial exception. The township treasurer had, prior to the commencement of this suit, paid out to the several school districts substantially all of the money received from the receiver. These payments were made on warrants drawn against the proper funds or on checks issued by the township treasurer.

■ It is now settled that, in the absence of statutory authority, a national banking association is without power to pledge its assets as security for deposits, either public or private. Marion v. Sneeden, 291 U.S. 262, 54 S.Ct. 421, 78 L.Ed. 787; Texas & Pacific R. Co. v. Pottorff, 291 U.S. 245, 54 S.Ct. 416, 78 L.Ed. 777. By the Act of June 25, 1930 (12 U.S.C.A. § 90), amendatory of the original act, it was provided: "Any association may, upon the deposit with it of public money of a State or any political subdivision thereof, give security for the safe-keeping and prompt payment of the money so deposited, of the same kind as is authorized by the law of the State in which such association is located in the case of other banking institutions in the State."

No law was in force in Illinois on March 17, 1932, nor at this time, authorizing state banks of Illinois to secure the deposits of public moneys by a pledge of bank assets. Under the authorities above cited, therefore, the contract of March 17, 1932, was ultra vires and the pledge of the bank assets was unauthorized. It follows that any payments made pursuant to the ultra vires contract, whether made by the bank while insolvent or by the receiver, constituted preferential payments.

■ Can these preferential payments be recovered back? On the part of the defendants it is contended that the preferential payments cannot be recovered back because the ultra vires and illegal contract has been fully executed. In substance, this

734

contention is that the Comptroller and the receiver ratified the illegal act of the bank; that, having ratified the contract, the plaintiff is now estopped to assert its invalidity. This contention ignores the proposition that the prohibition is statutory. Neither the bank nor the receiver had any power to waive the statutory prohibition.

The defendants received the preferential payment from the receiver. The money was paid first to the school treasurer and by him distributed to the various school districts, each district receiving its proportionate share. The defendants, therefore, have received money which, in equity and good conscience, they ought to refund. Although the boards of education and school directors were not parties to the original contract, yet, in order to maintain the action for money had and received, it is not necessary that there should be privity of contract. Yellow Cab Co. v. Howard, 243 Ill.App. 263; Board of Highway Commissioners v. City of Bloomington, 253 Ill. 164, 97 N.E. 280, Ann.Cas. 1913A, 471; Motor Power Equipment Co. v. Mercantile Discount Corporation, 267 Ill.App. 55. An action for money had and received will lie against school districts. Trustees of Schools v. Trustees of Schools, 81 Ill. 470.

Nor is the defense of laches available. The payments were made in September, 1932, and this suit was instituted in September, 1935. Under the law, in Illinois, the five-year statute of limitations on an open account would be applicable. Equity follows the law and plaintiff would not be guilty of laches until the five-year statute had run. It is argued, however, that by failing to bring the suit sooner the trustees have lost the right of action on the treasurer's bond. But the treasurer's bond is not before the court, nor are all the facts which might show a liability, or a want of liability, on the bond set forth in the stipulation.

Lastly, it is contended that no judgment against the defendants could be enforced. While no execution may be issued against the defendants in their official capacity, yet under the statutory policy of Illinois a judgment against trustees of schools, boards of education, and school directors may be enforced. See Smith-Hurd Ill.Stats. c. 122, § 274; chapter 122,

par. 375, Ill.Rev.Stat.1935. The courts of Illinois have applied this statute in numerous cases. Thomas v. Board of Education, 71 Ill. 283; Board of Education v. Neidenberger, 78 Ill. 58; Botkin v. Osborne, 39 Ill. 101; Watson v. Abry, 9 Ill. App. 280.

The court will find for the plaintiff and will enter a decree against all the defendants, except against the defendant Roy R. Baer individually. Counsel for plaintiff will prepare findings of fact and conclusions of law as required by equity rule 70½ (28 U.S.C.A. following section 723), and a decree. After submitting the findings, conclusions, and decree to counsel for defendants, they will be settled at Rockford on April 3, 1937.