(No. 24553

THE PEOPLE *ex rel.* Horace G. Lindheimer, County Collector, Appellee, *vs.* THE HURON & ORLEANS BUILDING CORPORATION, Appellant.

*Opinion filed April 20, 1938.*

ADELBERT BROWN, for appellant.

THOMAS J. COURTNEY, State's Attorney, MARSHALL V. KEARNEY, JOHN FITZGERALD, WILLIAM T. CRILLY, MANUEL E. COWEN, JACOB SHAMBERG, RICHARD S. FOLSOM, FRANK S. RIGHEIMER, RALPH W. CONDEE, JAMES W. COFFEY, and ALBERT FINK, for appellee.

Mr. JUSTICE ORR delivered the opinion of the court:

The Huron & Orleans Building Corporation has appealed from a judgment of the county court of Cook county overruling objections to taxes levied by the board of education of the city of Chicago.

It is first claimed that the board of education, in 1935, appropriated an amount to pay accrued interest on tax anticipation warrants in excess of that legally permissible. Section 135½ of the School law (State Bar Stat. 1935, par. 159 (1), provides, in part, that the annual appropriation ordinance of the board of education shall include "(a) all current expenditures or charges to be made or incurred during such fiscal year, including interest to accrue on anticipation tax warrants and temporary loans. * * * (d) all other liabilities, including the principal of all anticipation tax warrants and all temporary loans and all accrued interest thereon, incurred during prior years and unpaid at the beginning of such fiscal year." Column A of the chart set forth below indicates the amounts appropriated under paragraph (a), *supra,* in the years 1929-34, inclusive, for interest to accrue on warrants to be issued during each of those years. Column B represents the ex-

penditures or accrued charges against each of those appropriations at the close of the respective years. Column C represents the unexpended appropriation balances at the close of the respective years, and column D indicates the amounts appropriated under paragraph (d), *supra,* in 1935, for accrued interest on tax anticipation warrants unpaid at the beginning of the fiscal year.

| | A Appropriations made in prior years for "Interest on Temporary Loans" | B Expenditures per Annual Report | C Appropriation Balances at close of each fiscal year | D Appropriated in 1935 |
|---|---|---|---|---|
| **EDUCATIONAL FUND:** | | | | |
| 1929 | 3,000,000.00 | 3,262,305.34 | Deficit | 2,718,210.00 |
| 1930 | 2,500,000.00 | 4,709,744.35 | Deficit | 582,806.00 |
| 1931 | 4,300,000.00 | 4,063,144.39 | 236,855.61 | 496,092.00 |
| 1932 | 3,565,000.00 | 3,590,647.09 | Deficit | 692,088.50 |
| 1933 | 4,000,000.00 | 2,493,430.70 | 1,506,569.30 | 2,296,000.48 |
| 1934 | 3,750,000.00 | 4,038,723.33 | Deficit | 448,105.88 |
| | | | 1,743,424.91 | 7,233,302.86 |
| **BUILDING FUND:** | | | | |
| 1928 | 200,000.00 | 93,498.48 | 106,501.52 | 467,600.00 |
| 1929 | 400,000.00 | 1,025,286.30 | Deficit | 1,055,010.00 |
| 1930 | 1,000,000.00 | 1,701,080.74 | Deficit | 290,640.00 |
| 1931 | 1,700,000.00 | 1,468,553.89 | 231,446.11 | 85,601.00 |
| 1932 | 1,720,000.00 | 1,253,069.53 | 466,930.47 | 37,468.00 |
| 1933 | 1,000,000.00 | 678,476.25 | 321,523.75 | 40,370.00 |
| 1934 | 800,000.00 | 611,748.60 | 188,251.40 | 11,650.00 |
| | | | 1,314,653.24 | 1,988,339.00 |
| **PLAYGROUND FUND:** | | | | |
| 1929 | None | 14,250.00 | Deficit | 26,070.00 |
| 1931 | 30,000.00 | 27,881.65 | 2,118.35 | 635.09 |
| 1932 | 45,000.00 | 33,001.21 | 11,998.79 | 5,220.00 |
| 1933 | 45,000.00 | 21,323.70 | 23,676.30 | 18,056.50 |
| | | | 37,793.44 | 49,981.59 |

The objector argues that the appropriations made each year pursuant to authority conferred by paragraph (a), *supra,* are the maximum amounts that can be spent for in-

terest on the warrants issued and that only the unexpended balances, if any, can be appropriated in subsequent years pursuant to the provisions of paragraph (d). In support of this argument that part of section 135½ is cited which provides: "Neither said board, nor any member or committee thereof, * * * shall, during a fiscal year, expend or contract to be expended any money, or incur any liability, or enter into any contract which, by its terms, involves the expenditure of money for any of the purposes for which provision is made in the annual school budget in excess of the amounts appropriated in said budget," etc. We do not believe that it was the intent of the legislature to apply the above quoted restrictions of section 135½ to appropriations for interest on tax anticipation warrants. In *Berman* v. *Board of Education,* 360 Ill. 535, we said: "Such warrants do not constitute, and cannot be construed as constituting, any promise of payment, either express or implied, on the part of the taxing body issuing them, but the holder thereof 'must rely solely upon the ability and fidelity of the revenue officers in the collection and payment of the money mentioned in the warrants.' (*Fuller* v. *Heath,* 89 Ill. 296.) We have held that it was the intention of the legislature, in so providing, to make it clear that tax anticipation warrants do not constitute an obligation between the taxing body and the purchaser or holder thereof. (*City of Springfield* v. *Edwards,* 84 Ill. 626; *Coles County* v. *Goehring,* 209 id. 142.) The legal effect of the transaction is that the person receiving such warrant discharges the corporation from all liability on account of the services or obligation for which it was drawn." Under this interpretation, tax anticipation warrants, and the interest thereon, are not liabilities of the board of education but are mere assignments of taxes to be collected. Thus, the provisions of section 135½, above quoted, are not applicable.

Objections were also made to the tax levied by the board of education to raise funds for its working cash fund.

Section 134½ of the School law (State Bar Stat. 1935, chap. 122, par. 158 (1)) provides for the creation of a working cash fund of $25,000,000 by the board of education and authorizes the board to issue bonds in that amount. This has been done. Under section 189¼ of the School law (State Bar Stat. 1935, chap. 122, par. 313 (2)) authority is also given to raise money by taxation for the working cash fund, which tax "shall be in addition to the maximum of all other taxes and tax rates, including all taxes levied for the payment of bonded indebtedness, or interest thereof, incurred pursuant to the provisions of section 134½ of this act, which such board of education and the authorities of such city are now or may hereafter be authorized by law to levy," etc. In *People* v. *Mills Novelty Co.* 357 Ill. 285, we construed similar provisions in the Cities and Villages act and held that the two methods provided for the raising of funds for the working cash fund were alternative and that having raised the money by a bond issue, the city could not also levy a tax. It is true, as contended, that paragraph 1012 (3), of the Cities and Villages act states that the tax, if levied, shall be "in addition to the maximum of all other taxes which such city is now, or may hereafter be authorized by law to levy," etc. But this is not sufficient to distinguish the *Mills Novelty case* from the one before us. The provision in the Cities and Villages act is all-inclusive, and the mere fact that the tax to raise funds to retire the bonds is specified in section 189¼ of the School law does not indicate that the legislature intended that the school board could levy a tax after it had issued bonds to the full amount permitted by section 134½.

In 1933, the legislature enacted section 134¾ of the School law (State Bar Stat. 1935, par 158 (2)) which, in part, provides: "In all cases where the board of education * * * shall have created a working cash fund pursuant to section 134½ * * * the board * * * may incur an indebtedness for the purpose of increasing such work-

ing cash fund and issue bonds therefor in an amount not exceeding forty million dollars. * * * The authority herein granted shall be considered as cumulative authority for the issuance of bonds, and shall not be held to repeal any existing laws with respect thereto." Section 189¼ was amended to provide that "if bonds are authorized and sold under section 134¾ of this act, the board of education shall adopt a resolution indicating the amount of principal of and interest upon such bonds that will be due in each year and file a certified copy thereof with the county clerk, directing said official to reduce the taxes *thereafter to be extended for the purpose of providing moneys for the working cash fund,* beginning with the year 1935, and each year thereafter, by the amount of the tax levied to pay the principal of and interest upon such bonds that will be due and payable in the year for which such bond tax is to be extended." Pursuant to this authority, the board has issued $22,300,000 in bonds, $17,700,000 less than the permitted maximum, and it contends that this balance can be raised by the tax provided by section 189¼. This latter section makes no express provision for the levying of a tax to supply money for the working cash fund set up pursuant to the provisions of section 134¾. It states that its purpose is to provide "moneys for a working cash fund created pursuant to section 134½ of this act." However, it is clear that the legislature did not intend to authorize the creation of two working cash funds, one under section 134½ and another under section 134¾. The latter section, although not clearly worded, must be construed as mere authority to increase the amount of the fund originally created under section 134½. Thus, the increase permitted by section 134¾ is but a part of the original "working cash fund created pursuant to section 134½" and the authority granted under section 189¼ to raise money by taxation must be held to apply to the increased amount permitted under section 134¾. This interpretation is supported by the proviso added to section 189¼,

above quoted, when section 134¾ was enacted in 1933, which provides for the reduction of "the taxes thereafter to be extended for the purpose of providing moneys for the working cash fund," etc. Any other interpretation would give the proviso no meaning at all.

While the statutes on this subject are not as clear as they should be, we believe our interpretation is sound. It is the duty of this court to interpret the expressions of the legislature so as to give effect to each provision, if possible, and yet provide a rational whole. This we have done in the present case. No reason appears why the board of education should not be permitted to raise part of the $40,000,000 authorized by section 134¾ by the issuance of bonds, and part by the imposition of a tax. This question was not before us in the *Mills Novelty case, supra,* as, there, the full amount of the bonds had already been issued. The county court properly overruled the objection to the working cash fund tax.

The judgment is affirmed.  *Judgment affirmed.*