(Nos. 28579, 28580.—

EDWARD J. BERWIND, INC., *et al.*, Appellants, *vs.* CHICAGO PARK DISTRICT *et al.*, Appellees.—THE CAPITAL NATIONAL BANK *et al.*, Appellants, *vs.* CHICAGO PARK DISTRICT *et al.*, Appellees.

*Opinion filed March 20, 1946*

318

[black box]

STONE, WILSON, and MURPHY, JJ., dissenting.

[black box]

POPPENHUSEN, JOHNSTON, THOMPSON & RAYMOND, (FLOYD E. THOMPSON, and ALBERT E. JENNER, JR., of counsel,) all of Chicago, for appellants.

KIRKLAND, FLEMING, GREEN, MARTIN & ELLIS, and JOHN O. REES, (JOSEPH B. FLEMING, THOMAS B. MARTINEAU, and PHILIP A. LOZOWICK, of counsel,) all of Chicago, for appellees.

Mr. JUSTICE FULTON delivered the opinion of the court:

The two cases involved in this consolidated cause are appeals from separate decrees entered by the circuit court of Cook county. In the circuit court the cases were consolidated and heard as one cause. Separate decrees, however, were entered and a separate appeal was taken from each decree. The appeals have been consolidated here for hearing on the single record made in the consolidated cause in the circuit court. The two suits in equity were brought by appellants as unpaid tax anticipation warrant holders for an accounting against the Chicago Park District, as successor to West Chicago Park Commissioners.

On the hearing of both suits in the circuit court, decrees were entered ordering distribution of the proceeds of collections of anticipated taxes then in the treasury of the Chicago Park District and denied appellants all other relief asked for in the complaints.

No. 28579, Edward J. Berwind, Inc. *et al.* v. Chicago Park District *et al.*, is a suit for accounting by the holders of unpaid tax anticipation warrants issued in 1929 by West Chicago Park Commissioners to anticipate the collection of taxes levied for the payment of the ordinary and necessary expenses of said park district.

No. 28580, The Capital National Bank *et al.* v. Chicago Park District *et al.*, is a suit by the holders of tax anticipation warrants issued in 1929 by West Chicago Park Commissioners to anticipate the collection of taxes levied for the payment of principal and interest of maturing bonds issued by West Chicago Park Commissioners. Chicago Park District and West Chicago Park Commissioners were named as defendants in both cases. Out of the stipulations and the mass of testimony and figures in the record, the following statement presents the facts as we understand them, most of which are not seriously in dispute.

West Chicago Park Commissioners was created as a municipal corporation under a special act of February 27, 1869. Under the act of 1933, (Ill. Rev. Stat. 1943, chap. 105, par. 333.1 *et seq.,*) Chicago Park District was created as the successor of all the park districts in Chicago, upon a referendum vote as provided in the act. Pursuant to this referendum vote, on May 1, 1934, West Chicago Park Commissioners was succeeded by Chicago Park District. All debts and obligations of West Chicago Park Commissioners were assumed by Chicago Park District under said act of 1933.

In cause No. 28579, the record shows that on July 18, 1929, West Chicago Park Commissioners adopted its tax

levy resolution for that year. By that resolution a tax of 3.56⅔ mills on each one dollar assessed valuation of property was levied for the payment of the ordinary and necessary expenses of the district. Pursuant to the statute, the taxes were levied by rate and not by amount. At the time this levy was made, the statute required that a certificate of the levy be filed in the office of the county clerk on or before August 1 of the year in which the levy was made. Such certificate was made and filed. At the time this tax levying resolution was passed, and at the time a copy thereof was required to be filed in the office of the county clerk, the assessed valuation of taxable property within the district, for the years 1928 and 1929, had not been completed, because of a reassessment ordered by the State Tax Commission. The 1929 assessment was not completed until March 16, 1931. The 1927 regular quadrennial assessment, which was the last assessment available, fixed the assessed valuation of the property in the area of West Chicago Park Commissioners at $880,526,526. Based on that valuation, the rate of taxes levied for the ordinary and necessary expenses of the district would produce $3,140,544.61 in taxes.

On September 26, 1929, West Chicago Park Commissioners adopted a resolution authorizing the issuance of anticipation warrants in the sum of $3,000,000 to anticipate the collection of taxes levied for the payment of the ordinary and necessary expenses of the district. Thereafter, anticipation warrants were issued in the amount authorized by the resolution. Of the $3,000,000 of warrants authorized, $400,000 were delivered to a contractor to whom a balance of $392,371.48 was due on a contract for the construction of the Augusta boulevard improvement. There was also sold and delivered to various purchasers, $1,100,000. The remaining $1,500,000 of warrants were sold to Foreman National Corporation under

its offer of purchase dated November 25, 1929. By that offer, it agreed to purchase warrants in the amount of $1,500,000, subject to the approval of attorneys designated by it. Under the terms of the offer, the warrants were to be delivered on or before December 1, 1929. Warrants issued under the authority of the resolution of September 26, in the amount of $1,500,000, were delivered to Foreman National Corporation in accordance with this offer of purchase. These warrants were payable to a payee therein named. They were accepted by Foreman National Corporation "with the understanding that they will be exchanged for negotiable notes aggregating the same amount, on or before December 10, 1929."

With the delivery of the $1,500,000 of warrants to Foreman National Corporation on December 1, the issuance of which was authorized under the resolution of September 26, 1929, there were outstanding tax anticipation warrants issued under the authority of that resolution, in the sum of $3,000,000, of which $1,500,000 were held by Foreman National Corporation under the conditional delivery above referred to.

On December 2, 1929, the board adopted a resolution in which it referred to the resolution of September 26, authorizing the issuance of $3,000,000 of tax anticipation warrants. After reciting that $1,500,000 of said warrants had been issued and were outstanding, it treated the $1,500,000 delivered to Foreman National Corporation on December 1 as not then outstanding. The resolution then provided for the issuance of additional warrants in the amount of $800,000 against taxes levied for the ordinary and necessary expenses of the district. The resolution further provided that no further warrants under the authorization of September 26, 1929, should be issued. By a second resolution passed on the same day, the board of the district authorized the issuance of $700,000 of antici-

pation warrants to anticipate the collection of taxes levied for the purpose of paying maturing outstanding bonds and interest of the district.

On December 10, pursuant to the first resolution adopted on December 2, $800,000 of anticipation warrants were issued payable out of taxes levied for the ordinary and necessary expenses of the district, and $700,000 of warrants were issued payable out of taxes levied for the payment of bonds and interest, under the second resolution of December 2. These two issues of warrants aggregating $1,500,000 were, on December 10, 1929, delivered to Foreman National Corporation and that company surrendered the $1,500,000 of warrants delivered to it on December 1, which were cancelled by the district. Thus the total of outstanding tax anticipation warrants on December 10, 1929, issued to anticipate the collection of taxes levied for the ordinary and necessary expenses of the district, was $2,300,000. Warrants outstanding on the same date, issued to anticipate the collection of taxes levied for the payment of bonds and interest, were $700,000.

The $2,300,000 outstanding against taxes levied for the ordinary and necessary expenses of the district was less than 75 per cent of the taxes which would be produced by applying the rate levied of 3.56⅔ mills to the valuation of property for tax purposes, as fixed by the 1927 quadrennial assessment. The taxes levied for the payment of bonds and interest for the year 1929 were levied by amount and not by rate. The amount levied for the purpose of paying principal and interest on maturing bonds and interest was $1,268,892.50. The $700,000 of warrants issued against those taxes were, therefore, materially less than 75 per cent of the taxes levied.

The purpose of this suit was to obtain an accounting from West Chicago Park Commissioners and Chicago Park District, its successor, for taxes collected and received by

the district, applicable to the payment of these tax antici-
pation warrants, and which were diverted by the district
and used for its general corporate purposes.

The series of transactions relied upon as showing such
diversion are as follows: The district at all times main-
tained a "General Fund" account. Moneys received from
various sources, including proceeds of the sale of tax an-
ticipation warrants, annuity and benefit payroll deductions,
the proceeds of taxes collected against which no anticipa-
tion warrants were outstanding, transfer of money from
various other funds and miscellaneous income, were all
deposited in this account. All money deposited in this
fund which was not limited to the annuity or benefit funds
or which was not used for the payment of bonds was ulti-
mately expended for the ordinary and necessary expenses
of the operation and maintenance of the district.

The entire proceeds from taxes collected in any year
against which anticipation warrants had been issued were
placed in a separate tax levy fund such as "1929 Tax Levy
Fund." Except as hereafter noted in connection with the
transactions relating to the 1929 tax levy fund, which re-
sulted in some of the diversion complained of, all money
deposited in the 1929 tax levy fund was applied to the
payment of outstanding tax anticipation warrants. Taxes
collected were remitted by the county collector in lump
sums on account of taxes levied for each respective tax
year without segregation as between the levies. When re-
mittances were received from the county collector, such
collections were deposited, as received from the county
collector, in lump sums, in the applicable tax levy fund.
From the taxes extended for the year 1929, West Chicago
Park Commissioners received from the county collector
for taxes collected up to October 18, 1934, the date on
which Chicago Park District received the final accounting
from West Chicago Park Commissioners, the total sum

of $2,897,764.54. All of this, except $100,000 which was received on May 6, 1931, and which was deposited in the general fund, was deposited in the 1929 tax levy fund.

Of the $1,500,000 of warrants issued under the resolution of September 26, 1929, there is still outstanding the principal amount of $150,000, of which $100,000 are owned by two of the plaintiffs in cause No. 28579. Of the $800,000 in warrants issued under the first resolution of December 2, 1929, against the taxes levied for the payment of ordinary and necessary expenses of the district, warrants in the principal amount of $200,000 are outstanding, of which $194,000 are owned by six of the plaintiffs in cause No. 28579. Of the $700,000 in warrants issued under the second resolution of December 2, 1929, to anticipate the collection of taxes levied for the payment of bonds and interest, warrants in the principal amount of $561,000 are still outstanding, of which $551,000 are owned by the plaintiffs in cause No. 28580.

The first of a series of transactions which appellants claim resulted in the misapplication of taxes collected for the year 1929, applicable to the payment of tax anticipation warrants, was a remittance from the county collector of $100,000 on May 6, 1931, which was deposited in the general fund instead of the 1929 tax levy fund. On May 29, 1931, $100,000 was transferred from the tax levy fund to the general fund by voucher check designated as a "Loan to General Fund." On June 23, 1931, another $100,000 was likewise transferred from the tax levy fund to the general fund by a similar voucher check.

On June 25, 1931, the board of West Chicago Park Commissioners adopted a resolution reciting that the treasurer had borrowed $300,000 from the 1929 tax levy fund in order to meet current obligations of the district. It further recited that an additional $200,000 was required and necessary at that time for the payment of current obligations. By this resolution the action of the treasurer

in borrowing the $300,000 from the tax levy fund for the use of the general fund was ratified. The treasurer was directed to borrow an additional $200,000 from the 1929 tax levy fund as soon as funds were available. On June 29, 1931, $253,000 was transferred from the 1929 tax levy fund to the general fund by voucher check, designated as a "loan to the General Fund." As the result of these transactions $553,000 was transferred from the 1929 tax levy fund to the general funds of the district. All of the vouchers used in the foregoing transactions were approved by the finance committee of West Chicago Park Commissioners before the meetings of the board, and were approved by the board at the meetings. Such transactions all appear in the monthly reports of the treasurer to the board, which were likewise approved by the board. It is asserted by the appellants that on August 31, 1931, a further diversion of $92,500 was transferred from the 1929 tax levy fund to the general fund, making the total diversion aggregate the sum of $645,500. However, on September 21, 1931, the sum of $92,500 was transferred from the general tax fund to the 1929 tax levy fund. Thus the sum of $92,500 was held in the general fund about twenty days when it was transferred back to where it belonged and the total diversions remained at the figure of $553,000.

In January, 1932, $12,205.59, received from the county collector as proceeds of collections of taxes levied prior to 1927, and which belonged in the general fund for the payment of the ordinary and necessary expenses of the district, was placed ·in the 1929 tax levy fund. These transactions left the general fund owing to the 1929 tax levy fund $540,794.41, all of which was used by West Chicago Park Commissioners for the payment of its ordinary and necessary expenses for general corporate purposes and no part of which has been repaid.

The facts concerning the second series of transactions complained of show that pursuant to an act of May 19,

1927, (Laws of 1927, p. 686,) West Chicago Park Commissioners issued and sold $10,000,000 of improvement bonds. As required by that act, $7,000,000 of the proceeds of the sale of these bonds was deposited in a special fund designated as "Improvement Bonds of 1927 Fund." These funds were earmarked, as provided in the act, for the construction of permanent improvements in the district, one of which was the Augusta boulevard improvement, which was to be financed from this fund. The contract for the construction of Augusta boulevard was let to Commonwealth Improvement Company. When the improvement was completed there was a balance due the contractor of $392,371.48. The funds in the "Improvement Bonds of 1927 Fund" had been diverted and used for the payment of current expenses payable from the general funds and there was no money in the "Improvement Bonds of 1927 Fund" with which to pay the contractor the balance due.

On October 8, 1929, the board of West Chicago Park Commissioners adopted a resolution which recited the above facts. It authorized the treasurer to deliver to the contractor tax anticipation warrants issued under the resolution of September 26, 1929, of the face value of $400,000, and to accept the contractor's check for $7628.52, for the difference between the $400,000 of warrants delivered to the contractor and the amount of its claim. By the resolution, the treasurer was directed to deposit said check in the "Improvement Bonds of 1927 Fund." Pursuant to this resolution, $400,000 of anticipation warrants issued to anticipate the collection of taxes levied in 1929, for general corporate purposes, were delivered to the contractor. The contractor thereupon delivered its check to the district for $7628.52, in payment of the difference between the $400,000 anticipation warrants received and the amount due it. This check was deposited in the "Improvement Bonds of 1927 Fund." These transactions were confirmed

and approved by a resolution of the board adopted on October 31, 1929. On May 26, 1931, $439,200 of the proceeds of the collection of the 1929 taxes, which had been received by the district from the county collector and placed in its 1929 tax levy fund, were used by the district to pay the anticipation warrants theretofore issued and delivered to the contractor.

As a result of these transactions, the sum of $439,200 of taxes collected for the year 1929, against which anticipation warrants had been issued, was used by the district for the purpose of discharging an obligation of the district to the contractor for the construction of Augusta boulevard improvement.

These two series of transactions resulted in the diversion and use for other purposes of the district of the sum of $979,994.41 of the taxes collected for the year 1929, against which anticipation warrants had been issued, and for the payment of which such taxes were appropriated and pledged according to law.

It is contended by appellants that all of the diversions of funds received from the collection of taxes for the year 1929, which were assigned and appropriated for the payment of outstanding tax warrants, having resulted from the corporate action of West Chicago Park Commissioners, it was liable to account to the holders of the outstanding tax warrants for such funds which were diverted and used for the benefit of the district. If appellants are correct in this contention, Chicago Park District, which succeeded to all the property and rights of West Chicago Park Commissioners, and became liable for all its obligations, is equally liable to account for the funds diverted and used for the benefit of the former district.

At this point it becomes necessary to determine the amount of warrants which were legally issued. Appellees contend that there is an overissue in excess of 75 per cent of the taxes lawfully levied. As already indicated, the

taxes for the ordinary and necessary expenses of the district were levied by rate and not by amount. The rate certified was 3.56⅔ mills. The 1929 assessed value, as finally completed, was $736,964,979. This is the valuation on which the taxes were actually extended. Before extending the taxes, however, the county clerk scaled the rate under the Juul Law to 2.75 mills. This was the maximum rate which he could extend for that purpose.

It is contended by appellees that in determining the amount of taxes legally levied, the amount of taxes actually extended controls. We do not think that this contention can be sustained. The statute (Ill. Rev. Stat. 1943, chap. 146½, par. 2,) authorizes municipalities to issue tax warrants in anticipation of taxes levied to the extent of 75 per cent of the amount of taxes levied. In *People ex rel. Toman* v. *Chicago & North Western Railway Co.* 377 Ill. 547, we said: "Municipal authorities have nothing to do with fixing the rate at which taxes are extended. They have no way of anticipating exactly what the rate may be. This rate must be thereafter fixed and determined by the county clerk, within certain limits imposed by law. The county clerk must determine the rate at which the taxes shall be extended by him by taking into consideration the levies filed in his office by all the various taxing bodies within his county. He must scale, or reduce, the levies certified so as to bring the rate within the limits. fixed by law. (Ill. Rev. Stat. 1937, chap. 120, pars. 329, 330.) The determination, annually, of the amounts necessary to be raised by taxation for corporate purposes is committed to the municipal authorities. Their judgment as to such amounts is final. They are neither authorized, nor required, to fix the amount of taxes to be extended. What the law requires them to do is to ascertain the amounts necessary for their corporate purposes for the current year. (Ill. Rev. Stat. 1939, chap. 24, par. 123, p. 405.) They merely fix the amounts which, in their

judgment, will be needed to defray the corporate expenses of the municipality for the tax year. The amount of taxes which will be extended must be determined by the county clerk, in accordance with the statute, after the levies are made." To the same effect is *People ex rel. Carr* v. *Pittsburgh, Cincinnati, Chicago and St. Louis Railway Co.* 316 Ill. 410.

West Chicago Park Commissioners was authorized by statute to levy taxes for the ordinary and necessary expenses of the district in the aggregate amount of 3.56⅔ mills on each one dollar of the assessed valuation. In determining the amount of taxes the levy would produce, however, only the assessment for the year in which the levy was made can be considered. The district had a lawful right to levy taxes for its ordinary and necessary expenses in the aggregate amount of 3.56⅔ mills on each one dollar of the assessed valuation of the taxable property within the district for the year 1929. The fact that the rate levied was afterwards reduced by the county clerk according to law, did not reduce the amount of taxes levied. Under section 2 of the Warrant Act, the amount of the taxes lawfully levied and not the amount actually extended determines the amount of anticipation warrants which could be lawfully issued.

If, as in this case, the taxes are levied by rate and not by amount and the assessed value of property has not been fixed at the time the anticipation warrants are issued, such warrants can be issued only to the extent of 75 per cent of the taxes produced by the application of the rate levied to the assessed valuation as finally fixed. If the warrants are issued prior to the time the assessed valuation is fixed, so that the actual amount of taxes levied cannot then be ascertained, the amount issued must be kept within 75 per cent of the taxes actually levied, as fixed by the rate certified, applied to the assessed valuation when completed. Any warrants issued in excess of that amount would be

invalid. The result is that when the levy was made and the rate certified to the county clerk, the district had lawfully levied taxes in the amount which that rate would produce, based on the assessed valuation as finally fixed. This amount was $2,628,508.42. It could lawfully issue anticipation warrants up to 75 per cent of the taxes so levied, or, in round numbers, $1,971,000.

Subsequent to the time the levy was made, and prior to December 1, 1929, it had issued and sold warrants in the amount of $1,500,000, which were then outstanding. These warrants were Nos. 1 to 11 and 33 to 40. On that day it also issued, under the authority of the resolution of September 26, warrants in amount of $1,500,000 which were delivered conditionally to Foreman National Corporation, and which were afterwards surrendered and cancelled. In addition to the outstanding warrants in the amount of $1,500,000, issued prior to December 1, 1929, there could be lawfully issued, against taxes levied for the ordinary and necessary expenses, warrants in the additional amount of $471,000. On December 2, 1929, it issued against taxes levied for the ordinary and necessary expenses of the district warrants Nos. 101 to 420 in the aggregate amount of $800,000 which, together with $700,000 of warrants issued on the same day against taxes levied for the payment of bonds and interest, were delivered to Foreman National Corporation in exchange for the $1,500,000 of warrants theretofore conditionally delivered to it. On December 2, when the $800,000 general fund warrants were issued, it could only lawfully issue warrants in the amount of $471,000 in addition to the $1,500,000 then outstanding.

It follows that warrants Nos. 1 to 11, and 33 to 40, in the amount of $1,500,000, issued from October 8 to October 28, 1929, under the resolution of September 26, 1929, were lawfully issued. All of said warrants have been paid, except Nos. 38, 39 and 40, each in the denom-

ination of $50,000. Numbers 38 and 40 are owned by two of the plaintiffs in cause No. 28579. The $800,000 issued on December 2, 1929, were numbered from 101 to 420. They were all issued and sold at the same time and to the same purchaser. Under our holding in *Lubezny* v. *Ball,* 389 Ill. 263, they were payable in numerical order. They were also valid in that order, until the 75 per cent limit was reached. Numbers 101 to 274, in the aggregate amount of $470,000 were within the 75 per cent limit and were lawfully issued. Of the $800,000 issued, warrants in the aggregate amount of $200,000 are now outstanding. Each of the outstanding warrants bears a number higher than No. 274.

The warrants involved in cause No. 28580 are the $700,000 issued on December 2, 1929, and delivered to Foreman National Corporation. These warrants were issued to anticipate taxes levied for the payment of principal and interest on outstanding bonds of the district. It is contended by appellees that these warrants were issued without authority of law and are invalid. The argument is that the Tax Warrant Act gives no authority to a municipality to issue warrants to anticipate the collection of taxes levied for the payment of bonds and interest. Appellees cite no authority in point in support of this contention. On the contrary, the authority to issue warrants to anticipate the collection of taxes levied for the payment of outstanding bonds and interest maturing during the tax year has been recognized and approved by this court. *People ex rel. Toman* v. *Central Plaza Hotel Corp.* 375 Ill. 114.

As stated in the above case, where the collection of taxes will be delayed and bonds and interest payments will mature before the taxes are collected, the only method by which the municipality can prevent the bonds going into default and thereby protect its credit is by applying to the payment thereof funds arising from the sale of tax antici-

pation warrants. The facts involved in this case present a concrete example of the wisdom of such a policy. Taxes for the payment of outstanding bonds and interest maturing in the year 1929 were levied in the amount of $1,268,892.50. In the resolution levying the taxes, the bonds and interest payments maturing during the tax year were set out in detail. These payments aggregate the amount of the taxes levied. Normally, of course, the taxes would be collected in time to meet these payments, but here was a special and unusual condition. The assessment was not completed until substantially more than a year after the levy was made. Taxes could not be extended until the assessment was complete. The only way to prevent the bonds and interest payments going into default, because of this delay, was the issuance of warrants anticipating the collection of the taxes levied. In this situation, in our opinion, the statute clearly authorized the issuance of the warrants anticipating the taxes levied for the payment of bonds and interest.

Appellees further contend that these warrants were not sold; that they, together with the $800,000 issued on the same day against the general fund, were merely delivered to the Foreman National Corporation in exchange for the $1,500,000 of warrants delivered to that company on December 1. But this is merely a play on words. We have already observed that the $1,500,000 of warrants delivered to Foreman National Corporation on December 1 were delivered to it conditionally with the understanding that they were to be exchanged for other warrants at a later date, and that they were, on December 10, exchanged; and the transaction was, in effect, a sale of the $800,000 in warrants issued against the general fund, and the $700,000 of warrants issued against the bond and interest fund, under the resolutions of December 2.

A further contention is made that the warrants were, in form, negotiable promissory notes, and not tax anticipa-

tion warrants. We think the language of the warrants themselves plainly refutes this contention and that the objection is not well taken. It was definitely recited in the warrants: "This warrant is issued in anticipation of said taxes so levied for the year 1929 to provide a fund to meet and defray the payment of the principal of maturing bonds heretofore legally issued by said West Chicago Park Commissioners and for the payment of interest accruing on said bonds and is payable, both principal and interest, solely from said taxes when collected and not otherwise, which taxes are assigned and pledged to the payment of this warrant and of all warrants issued against and in anticipation of such taxes, * * *."

It is admitted by appellees that sufficient funds from the taxes levied for the payment of bonds and interest were collected and received by the district to pay and discharge the $700,000 of warrants issued against said taxes in full, together with the interest thereon. It is also conceded that said warrants would have been paid had the taxes received for that purpose not been diverted by the action of the board of West Chicago Park Commissioners and used for other corporate purposes.

This brings us to the main question in this case which is the liability of the district for the diversion and misappropriation of the $979,994.41 diverted. It is the contention of appellants that the diversions above outlined constituted the taking of private property for public use without just compensation within the meaning of the State and Federal constitutions and that the Chicago Park District must restore the funds with statutory interest. It is insisted that the warrant holders are entitled to be paid their own money which the district voluntarily collected and deposited in its own treasury but later appropriated and diverted to other corporate purposes and obligations.

It is the position of the appellees that the West Chicago Park Commissioners was not a municipal corporation in

the sense that it is liable for the wrongful acts of its officers and that the appellant-plaintiffs are limited to their remedy against the officers of the district; that to hold otherwise would be contrary to every previous decision of this court. Much stress is laid upon the fact that the tax anticipation warrants create no debt against the municipality by which they are issued. This is not, however, a suit on the tax warrants. It is settled in this State that school districts, which are *quasi*-municipal corporations, are not liable for the wrongful acts of their officers. (*Chicago City Bank and Trust Co.* v. *Board of Education,* 386 Ill. 508.) This court has many times, however, held that the West Chicago Park Commissioners was a municipal corporation proper. *West Chicago Park Comrs.* v. *City of Chicago,* 152 Ill. 392; *Van Nada* v. *Goedde,* 263 Ill. 105; *People ex rel. Hoyne* v. *Chicago Motor Bus Co.* 295 Ill. 486; *People ex rel. Carr* v. *Kesner,* 321 Ill. 230.

In the case of *West Chicago Park Comrs.* v. *City of Chicago,* 152 Ill. 392, this court had occasion to examine carefully and extensively the question of whether West Chicago Park Commissioners was a *quasi*-municipal corporation or a municipal corporation proper and whether, in the management and control of the park property, the jurisdiction of the park board was exclusive. In that case this court at great length presented the history of and reviewed the many acts of the General Assembly, beginning with the year 1869 and continuing down to 1887, in which powers were vested in the West Chicago Park Commissioners. The plain conclusion was there announced that the corporation possessed all the powers of a municipal body and that its authority to govern, regulate, manage, control and direct the establishment and maintenance of certain parks and boulevards was plenary and exclusive of that of the city of Chicago. After an exhaustive discussion this court concluded:

"Municipal corporations, such as cities and villages incorporated under special charters or voluntarily organized under general incorporation laws, are called into existence either at the direct solicitation or by the free consent of the persons composing them, while *quasi* municipal corporations, sometimes called involuntary corporations, such as counties, etc., are only local organizations, which, for the purposes of civil administration, are invested with a few of the characteristics of corporate existence. They are local subdivisions of the State, created by the sovereign legislative power, of its own sovereign will, and without any particular solicitation, consent or concurrent action of the people who inhabit them. [Citations.]

"Applying the foregoing test,—a test which seems to be abundantly sustained by all the authorities,—it follows, logically and necessarily, that the corporation in question falls within the class known as municipal corporations, properly so called, and not that of *quasi* or involuntary municipal corporations. But our attention is called to the fact that this court, in former decisions, in speaking of this identical corporation and other similar corporations, has called them *quasi* municipal corporations. This was the case in *People* v. *Salomon,* 51 Ill. 37, *Wilcox* v. *People,* 90 id. 186, *West Chicago Park Comrs.* v. *Western Union Tel. Co.* 103 id. 33, and *Kedzie* v. *West Park Comrs.* 114 id. 280. In other cases they are spoken of as municipal corporations, without any qualifying word. (*People* v. *Walsh,* 96 Ill. 232; *South Park Comrs.* v. *Dunlevy,* 91 id. 49.) On examining these cases, however, it will be found that in none of them was there any attempt to discriminate between municipal and *quasi* municipal corporations, nor any occasion for so doing. * * *

"It in no way militates against the view that the park board is a municipal corporation properly so called, that the objects and powers of the corporation are limited to

the matter of creating, improving, embellishing and maintaining, in perpetuity, a system of parks, boulevards and ways. The powers of every municipal corporation are necessarily more or less limited, and the scope and extent of their corporate powers, and their limitations, are always matters of legislative discretion. But the number and scope of the objects for which a public corporation is organized do not, and have never been held to, constitute the test by which to determine whether the organization is a municipal corporation properly so called, or only a *quasi* municipal corporation. The park board, within the purview of its powers, is a corporation endowed with the same corporate functions, derived from the same source, and exercised in substantially the same way, as the city of Chicago."

In support of the contention that municipalities are not liable for the wrongful diversion of the funds, appellees have cited a large number of Illinois authorities. In the earlier group of cases they rely heavily upon *City of Springfield* v. *Edwards*, 84 Ill. 626; *Fuller* v. *Heath*, 89 Ill. 296, and *Fuller* v. *City of Chicago*, 89 Ill. 282. In the *Edwards case* it was held that the issuance of tax anticipation warrants created no liability against the municipality for the payment of which taxes may be levied and collected, but particularly found that a municipal corporation, with the aid and consent of its creditors, could not devise a scheme to avoid constitutional debt limits or incur indebtedness in excess of five per cent on the valuation of the taxable property of the city as fixed by law.

In each of the above entitled causes, the main object of the suits was to prevent a municipal corporation from issuing tax warrants which would add to the debt of the city so long as its present indebtedness remained in excess of the constitutional limitation. In none of the cases was there involved the question of the diversion by the corporation of taxes collected against which tax anticipation war-

rants had been issued. Those cases were decided prior to the adoption of the Warrant Act of 1879, and when no statutory duty was imposed upon municipalities to set apart the taxes against which anticipation warrants had been issued and to hold the funds for the payment of such warrants.

Another group of later decisions relied upon by appellees, *People* v. *Hayes,* 365 Ill. 318; *People ex rel. Lindheimer* v. *Huron & Orleans Building Corp.* 368 Ill. 469; *People ex rel. Wilson* v. *Wabash Railway Co.* 368 Ill. 497, and *People ex rel. Lindheimer* v. *Axelrod,* 373 Ill. 446, involve only the question of whether the issuance of tax anticipation warrants by a *quasi*-municipal corporation created an indebtedness against the municipality for the payment of such warrants. We do not think these cases touch the exact point under consideration in the present case.

Other late cases frequently referred to by appellees, *Berman* v. *Board of Education,* 360 Ill. 535; *Leviton* v. *Board of Education,* 374 Ill. 594; *People ex rel. Toman* v. *Granada Apartment Hotel Corp.* 381 Ill. 41; *Leviton* v. *Board of Education,* 385 Ill. 599, and *People ex rel. Reconstruction Finance Corp.* v. *Board of Education,* 386 Ill. 522, involved tax anticipation warrants issued by the board of education of the city of Chicago. In *Chicago City Bank and Trust Co.* v. *Board of Education,* 386 Ill. 508, it was clearly held that *quasi*-municipal corporations, such as a board of education, are not liable for the wrongful acts of their officers in diverting tax money collected against which anticipation warrants have been issued. While the appellees argue with marked ability that the recent cases above cited are based upon the same theory as that employed by the appellants in the instant case, we feel that those cases can be clearly distinguished because of the differences in the facts and the issues presented. We do not deem those decisions to be in conflict with the opinion in this case. In *Leviton* v. *Board of Education,* 374 Ill.

594, we said: "The cases of *People* v. *Village of Bradley*, 367 Ill. 301, *Rothschild* v. *Village of Calumet Park, supra* [350 Ill. 330], and *Conway* v. *City of Chicago,* 237 Ill. 128, all involve a city or village which are voluntary corporations and not *quasi* municipal corporations, which fact distinguishes such cases from those above cited dealing with *quasi* municipal corporations." In *People ex rel. Toman* v. *Chicago and Northwestern Railway Co.* 377 Ill. 547, this court held that a tax anticipation warrant creates no debt against a municipality but it is also authority for the statement that the issuance of such warrants creates an obligation on the part of the municipality, "to apply the taxes when collected to the payment of the warrant in so far as the amount collected may extend."

Section 2 of the Warrant Act provides that the taxes against which anticipation warrants are issued "shall be set apart and held for their payment." This is clearly a duty and obligation of the municipality. Here it is conceded that sufficient funds from the 1929 tax levy were collected in to pay the anticipation tax warrants in controversy. It is further admitted and shown by the record that the district voluntarily took possession of the funds and by resolution and other corporate action used the money belonging to the plaintiffs to pay general creditors of the district. There was no compliance with the above section of the Warrant Act requiring that such funds should be set apart and held for the payment of the anticipation tax warrants.

It is conceded that the issuance of an anticipation tax warrant in the first instance is not the direct obligation of a municipality and that it is simply an assignment of tax money which directs the treasurer to pay the holder out of funds collected in from the tax levy anticipated when collected. However, appellants insist that when the corporation collects in all of the moneys already assigned to the tax warrant holders, deposits them in the treasury and

then without their knowledge or consent, by regular corporate action, appropriates and uses the said moneys to pay off its creditors, it becomes liable to compensate the tax warrant holders for taking their property for public use.

We believe this position is well taken. In *Berman* v. *Board of Education*, 360 Ill. 535, this court, after holding that a tax warrant did not constitute an obligation between the taxing body and the holder thereof, said: "The transaction is similiar to that of a bank selling a note 'without recourse'." However, if the note had been left with the bank for collection, and the maker paid it in full and the bank appropriated the funds to its own use, no person would contend that the bank was free from liability.

As we view the facts in this case, when the municipality voluntarily collected in the anticipated taxes and disregarding its plain duty under section 2 of the Warrant Act to apply them to the payment of the warrants, but used the money for its other purposes, it created an obligation upon the municipality to make the warrant holders whole by restoring the moneys to the treasury. Under any theory the moneys collected in such manner belonged to the tax warrant holders.

Section 13 of article II of our State constitution says that private property shall not be taken for public use without just compensation.

We believe the decisions of this court sustain this equitable doctrine. In *People ex rel. Anderson* v. *Village of Bradley*, 367 Ill. 301, we said: "The change in the positions of the parties has been brought about by the default and misfeasance, if not malfeasance, of the village, acting through its governmental officials." In the case of *City of Chicago* v. *Sexton*, 115 Ill. 230, it was stated: "The city owed the duty to have a competent person in charge of this office, and to see that he discharged his duty. His act in selecting and handing out plans and tracings was its act. There is nothing new in thus holding a municipality

responsible for the want of fidelity of those who act for it. Suits of that kind are of daily occurrence. The liability thus imposed is not within the constitutional and statutory limitations in regard to the creation of indebtedness."

Other cases which uphold this principle are: *Rothschild* v. *Village of Calumet Park,* 350 Ill. 330; *Conway* v. *City of Chicago,* 237 Ill. 128; *Harrold* v. *City of East St. Louis,* 197 Ill. App. 121; *Indiana Harbor Belt Railroad Co.* v. *City of Calumet City,* 391 Ill. 280.

We know of no law which permits a municipality to take the property of one person and give it to another, and the means and manner of such diversions are quite immaterial. Certainly the assignment of the tax moneys by way of warrants sold to the warrant holders for full value and the subsequent appropriation of the proceeds afford a complete basis for a suit in equity on account of such unwarranted action on the part of the municipality.

Any other rule would result in approval of a municipality issuing tax anticipation warrants and then by a regular course of corporate action, unlawfully diverting funds received from the collection of the taxes and using the same for its other purposes, without incurring any liability to the unpaid tax warrant holders. Such a course of action cannot be approved by a court of equity. In *Trustees of Schools* v. *Trustees of Schools,* 81 Ill. 470, it was said: "But it is said that this money was paid to the treasurer as an individual, and the trustees controlled it as individuals, and the recovery should be had against them as individuals. The money was ordered to be paid to the treasurer, and not the individual holding the office; and he received it as treasurer, loaned it as treasurer, and the trustees ordered him to pay it out as treasurer. Nor did the trustees assume the control of the fund as individuals. All they did, so far as we can see, was as trustees and not as individuals. But it is said that the treasurer had no power, as an officer, to receive the money, nor did the trustees have a right to

control it as officers. To admit this position would be to hold that the corporation could be held liable for no wrongful act of its officers. If, through mistake, they should collect money not owing to the fund, and it were placed in the treasury, the corporation could hold it, and the person wronged would be compelled to look to the individual officers for his money. It would be to hold that whatever funds found their way into the school treasury, they might hold it, however unjust or dishonest. Such can not be the law, as it shocks every principle of right. Such corporations, like individuals, must, when they obtain and hold the money of another, be held to refund it. There are many acts of such officers for which such corporations are not liable, but this is not of that class."

To further analyze and discuss all the cases cited in the abundant briefs filed in this case would require extending this opinion to an unwarranted length.

It is our conclusion that appellee Chicago Park District, as successor of West Chicago Park Commissioners, is liable for the funds diverted to the extent which the outstanding warrants, owned by the plaintiffs, are valid. The only outstanding warrants involved in cause No. 28579, which were validly issued, are Nos. 38 and 40, each in the denomination of $50,000. The facts are all in the record. No accounting will be necessary. The decree in that case is reversed and the cause is remanded to the circuit court, with directions to enter a decree in the form of separate money judgments in favor of the holders of warrants Nos. 38 and 40, and against the defendants for the amounts of said warrants, with interest thereon at the rate provided in said warrants, from the date of the warrants to June 29, 1931, that being the date of the last diversion of funds, and with interest on the principal amounts from June 29, 1931, to the date the decree is entered, at the rate of 5 per cent per annum.

342

In cause No. 28580, the decree is reversed and the cause remanded. The facts are all in the record. No accounting will be necessary. The amount of the diverted funds, with interest computed at the lawful rate, will exceed the amount due on the outstanding valid warrants. The cause is remanded to the circuit court with directions to enter a decree in the form of separate money judgments in favor of the plaintiffs, who are holders of the warrants involved in this case, which were issued under the second resolution of December 2, 1929, and against the defendants for the amounts of such warrants, with interest thereon at the rate provided in said warrants, from the date of the warrants to June 29, 1931, that being the date of the last diversion of funds, and with interest computed on the principal amounts of such warrants from June 29, 1931, to the date the decree is entered, at the rate of 5 per cent per annum.

*Reversed and remanded, with directions.*

STONE, WILSON, and MURPHY, JJ., dissenting.